Burnham *v.* Morrissey.

## GEORGE P. BURNHAM *vs.* JOHN MORRISSEY.

Upon the hearing of a writ of *habeas corpus* in behalf of one imprisoned by order of the house of representatives of Massachusetts, the petitioner cannot give in evidence his written request to the speaker, before his commitment, for a hearing at the bar of the house, and the speaker's refusal.

This court has power to inquire on *habeas corpus* into the lawfulness of imprisonment by order of the house of representatives of Massachusetts.

The house of representatives of Massachusetts has power to compel witnesses to attend and testify before the house or one of its committees.

The refusal of a witness, duly notified or summoned, or who has voluntarily appeared, to attend or testify before the house of representatives of Massachusetts, or a committee of that house, is a contempt of the authority of the house, for which the house may cause him to be arrested and brought before the house.

A wilful and unjustifiable refusal of a witness, legally brought before the house of representatives of Massachusetts, to testify before the house or one of its committees, is " disrespect to the house by contemptuous behavior in its presence," within the meaning of the Constitution of Massachusetts, c. 1, § 3, art. 10, for which he may be imprisoned by order of the house for a term not exceeding thirty days.

It is no ground for the refusal of a witness to produce books or papers, when required by lawful authority, that they are private.

A committee of the house of representatives of Massachusetts, invested by the house with general powers to investigate the affairs of the state liquor agency established by *St.* 1855, c. 215, and to send for persons and papers, reported to the house that they had notified the state liquor agent, and he had appeared before the committee, but had refused to produce certain books which they asked for. Whereupon said agent, by order of the house, was arrested and brought before the house to answer as for a contempt in such refusal, and was interrogated by the house and asked to produce said books; and, after being heard by counsel, declined to do so, on the ground that he had no books which he had not

produced before the committee, except his private books of account, which contained noth
ing relating to the matters inquired of. The house thereupon, without further hearing
him, passed an order, reciting that he had failed satisfactorily to answer the questions put
to him by the house, or to produce the books and papers required of him by a special com-
mittee of the house and also by the house, and was therein guilty of a contempt of its au-
thority, and therefore issued a warrant to the sergeant at arms, reciting that he had been
brought to the bar of the house to answer as for a contempt in refusing to comply with
the order of the special committee of the house to produce certain books, and had refused
satisfactorily to answer the interrogatories of the house, or to produce the books required
of him by the committee and by the house; and reciting the order of the house thereon;
and committing him for twenty five days, unless he should sooner signify his willingness to
produce the books, and satisfactorily answer the interrogatories. *Held*, that the commit-
ment was legal.

The commitment of a witness, by order of the house of representatives of Massachusetts,
for a term not exceeding thirty days, for contemptuous behavior in its presence, by refus-
ing to produce books and papers which he had been lawfully required to produce, is not
invalidated by containing a direction that upon informing the officer having him in cus-
tody, of his readiness to produce said books and papers, he shall be brought before the
house.

The sergeant at arms of the legislature of Massachusetts may lawfully detain in the county
jail, with the permission of the sheriff, a prisoner committed by authority of the house of
representatives.

HABEAS CORPUS, in the form prescribed by the Rev. Sts. *c.* 111,
§ 5, of George P. Burnham, alleged to be imprisoned and re-
strained of his liberty by "John Morrissey, or William S. Bart-
lett, of Boston in the county of Suffolk."

Morrissey justified on the ground that he was the sergeant at
arms of the Commonwealth, and as such authorized to execute
all lawful processes directed to him by the general court or either
branch thereof; and that by virtue of a warrant from the speaker
of the house of representatives, which is copied in the margin,[*]

---

[*] Commonwealth of Massachusetts.

By the authority of the House of Representatives of the Commonwealth of Mas-
sachusetts.

To John Morrissey, sergeant at arms, and all sheriffs, deputy sheriffs, policemen
and constables to whom these presents shall come, greeting:

Whereas the house of representatives of the Commonwealth of Massachu-
setts, in session in the city of Boston, on the fourth day of November current, did
authorize and require the speaker to issue his warrant to the sergeant at arms,
commanding him to arrest George P. Burnham, wherever he might be found, and
to have his body at the bar of the house forthwith, to answer as for a contempt in
refusing to comply with the order of the special committee of the house on the
subject of the liquor agency, to produce certain books and papers, in pursuance
of the authority conferred by the house upon said committee:

he committed Burnham to the Suffolk jail, and left a copy of the warrant and of his return thereon with William S. Bartlett,

And whereas, on the 5th day of November current, the sergeant at arms having arrested the said Burnham, the house of representatives did further order that the said Burnham be arraigned at the bar of the house, and that certain questions be propounded to him, by order of the house :

And whereas said Burnham was so arraigned, and said questions and other questions were propounded, by order of the house, and the said Burnham failed satisfactorily to answer said questions :

And whereas said Burnham likewise refused to produce the books and papers required of him by a special committee of the house, and also by the house :

And whereas the house of representatives, on this ninth day of November, did order as follows :

" Whereas George P. Burnham has failed satisfactorily to answer the questions propounded to him by the house, or to produce the books and papers required of him by a special committee of the house, and also by this house, and is therein guilty of a contempt of its authority.

" Ordered, That the said George P. Burnham be committed by the sergeant at arms to the jail in Suffolk county, there to be kept in close custody for the space of twenty five days, unless he shall sooner signify his willingness to produce the books and papers called for by the special committee, and to satisfactorily answer the questions proposed to him by the house. And for the commitment and detention of said George P. Burnham this order shall be a sufficient warrant.

" Ordered, That whenever the officer having the said George P. Burnham in custody shall be informed by said Burnham that he is ready and willing to produce said books and papers relating to the liquor agency, it shall be the duty of such officer to deliver the said George P. Burnham over to the sergeant at arms of this house, whose duty it shall be to take the said Burnham immediately before this house, and to hold him in custody, subject to the order of this house.

All of which appears by the journal and records of said House of Representatives, now in session in the city of Boston :

These therefore are to require you, the said John Morrissey, sergeant at arms, to commit the body of said George P. Burnham to the common jail of the county of Suffolk, to be there securely and closely confined for the space of twenty five days, unless he shall be sooner discharged conformably to the order of this house of representatives, for a period not exceeding twenty five days ; and all sheriffs, deputies and civil officers of the Commonwealth of Massachusetts, and every other person, are hereby required to be aiding and assisting to you in the execution hereof; for which this shall be your sufficient warrant.

Given under my hand and the seal of the house of representatives this ninth day of November in the year one thousand eight hundred and fifty nine.

CHARLES HALE, Speaker.

keeper of said jail; that said Bartlett, and the sheriff of Suffolk, under whose direction Bartlett had charge of said jail, declined to receive the body of Burnham; but the sheriff permitted the respondent, in behalf and in the name and by authority of the house of representatives, to occupy apartments in the jail for the purpose of detaining Burnham; that the respondent had not, since this warrant was committed to him, received notice of any further order or direction of the house of representatives, or information from any source that Burnham was ready or willing to produce the books and papers relating to the liquor agency; and that he had kept Burnham in said jail by virtue of said warrant until he was taken from his custody by the sheriff upon this writ of *habeas corpus*. Bartlett made no answer to the writ.

At the hearing on the 11th of November, before the chief justice, and *Dewey, Metcalf* and *Hoar,* JJ., the record of the house of representatives referred to in the speaker's warrant was admitted in evidence without objection, and showed the following proceedings:

The house ordered that a special committee be invested with general powers to investigate the affairs of the state liquor agency, and be authorized to send for persons and papers.

On the 4th of November the committee reported that they had proceeded to hear and examine witnesses, and had notified the commissioner, George P. Burnham, of the hearing, and he appeared before the committee; that testimony was given before them of certain settlements of bills for liquors sold to the agency, for less than the prices appearing on the invoice books of the agency; that it appeared that a cash book and ledger were kept by the commissioner, and the committee ordered him " to produce before the committee all the books and papers relating to the business of the liquor commission;" whereupon he produced certain other books, " but did not produce the cash book or ledger, and, on being specially requested to do so, peremptorily refused to produce those books, or any other books or papers than those he had already produced. Under this state of facts, the committee ask the further direction of the house."

The house thereupon ordered the speaker to issue his warrant to the sergeant at arms, " commanding him to arrest George P. Burnham, wherever he may be found, and have his body at the bar of the house forthwith, to answer as for a contempt, in refusing to comply with the order of the special committee of the house, on the subject of the liquor agency, to produce certain books and papers in pursuance of the authority conferred by the house upon said committee." The speaker issued a warrant accordingly, and the sergeant at arms made this return thereon . " In obedience to the within warrant, I arrested the within named George P. Burnham, at the State House, this fourth day of November 1859, and I now produce the within named George P. Burnham, in person, at the bar of the house, to answer as within ordered."

On the 5th of November Burnham was arraigned at the bar of the house, and the following questions were propounded by the speaker, by order of the house.

" 1st. What excuse have you for refusing to produce the cash book and ledger kept by you as commissioner under the laws of 1855, chap. 470, and 1858, chap. 172, when requested and or dered so to do by the special committee of the house before whom you have appeared ?

" 2d. Are you now ready to produce those books ?

" 3d. What excuse have you for refusing to produce before said committee all the books and papers kept by you as such commissioner under said laws, when directed and ordered so to do by said committee ?

" 4th. Are you ready now to produce all such books and papers ? "

The house ordered that Burnham be allowed time and the assistance of counsel to prepare his answers in writing. He then claimed and was allowed the right to be heard by counsel at the bar of the house, before answering the interrogatories, which he afterwards answered as follows :

" To the first question propounded by the house I answer that I refused to produce the books referred to, 1st. Because there are no such books required by the laws referred to, the only cash

book and ledger I had being my own private books of account. 2d. Because I was before the committee only as a party defending myself against allegations imputing to me offences. 3d. Because I was not under summons from the speaker of the house, nor the committee, nor was I in any manner before the committee as a witness. 4th. Because the order sought to compel me to produce those books in support of allegations against me, (which I declare to be false,) and thus to compel me to furnish instruments of proof to be used as evidence against myself. 5th. Because I was not under any order of this house to produce any specific books whatever, and therefore I was not in the capacity of a public officer called upon by this house to produce public documents or information for its use touching public affairs or interests.

" And I did believe and I am advised by my counsel that it was my right and duty to defend myself before the committee in my own way, so long as I maintained a respectful demeanor and proper decorum.

" I entirely disclaim all contempt towards this house and its committee, and I believe that in the conduct for which I am now arraigned before this house I was only vindicating my own rights and those of every citizen who may hereafter be similarly accused."

To the second interrogatory he answered : " I am not now ready to produce any cash book or ledger. I have no books, save my own private books, of that description. And I have already voluntarily, as a mere act of courtesy, exhibited to the committee before which, at its invitation, I appeared as respon-.dent, all records which are public books of the commission. These books are already in the control of the committee, and of this honorable house."

His answers to the third and fourth interrogatories were substantially similar.

The house then propounded to him the following additional interrogatories :

" 1st. Will you now produce to this house the cash book and ledger kept by your clerk, Mr. Boardman, and in which he testi-

fied were entered the transactions of the State Liquor Agency while you were commissioner ?

" 2d. Do you decline to produce the cash book and ledger for the reason that such production may in your opinion tend to criminate you ? "

To the first of which Burnham answered : " I respectfully decline to answer this question, which involves the supposed testimony of a witness, which testimony is not before the house. My answer could not be made without endangering a misunderstanding between the house and myself. If any specific books are described I can answer."

To the second question Burnham answered : " I respectfully suggest that I am not bound to express nor even to entertain any opinion as to the probable effect of the production of the cash book and ledger asked for by the committee. It is enough that, being under accusation, I cannot, under the 12th article of the Bill of Rights, be compelled to furnish evidence against myself, and these books were sought for to be used as against me."

The first of the last two interrogatories was again put to Burnham, who answered : " I have in good faith endeavored to answer properly. I know I have answered respectfully. I cannot in justice to myself make any answer other than those already made. I have answered promptly, without delay, to save time. I must ask delay to consider my rights."

The house then propounded this interrogatory : " Will you now produce the cash book and ledger in which are recorded the transactions of the liquor commission while you were commissioner ? "

To which Burnham answered : " I have no such cash book and ledger except my own private books, which contain my personal business, my family and other expenses. The 'record books required by law, and produced by me, and now in the hands of the committee, contain all the transactions and original entries of the liquor commission. No other light or information concerning that business could be derived from the cash book and ledger asked for. To produce these books would be simply to expose my private affairs disconnected from the public ser-

Burnham *v.* Morrissey.

vice. And it would besides be surrendering my constitutional right to refuse to furnish evidence sought for by my accusers. I respectfully decline to produce my cash book and ledger."

On the 9th of November an order was renewed, which had been offered and ruled inadmissible at a previous stage, that Burnham " be discharged from arrest ; and that the attorney general be directed to examine the testimony already developed before the committee of investigation, and such other testimony as may be available ; and if in his judgment the testimony warrants it, that he forthwith prosecute said Burnham under the criminal law, and put in suit his bond to the Commonwealth, and take all other measures in relation to the matter that law and justice may require." But the house substituted and passed the order recited in the speaker's warrant, (*ante*, 228, note,) and the speaker, by order of the house, issued said warrant.

This case was argued on the 11th of November.

*J. A. Andrew*, for Burnham, offered to prove that, before the final adoption of the order of commitment, Burnham sent a written request to the speaker for leave to be heard at the bar of the house ; and that this request was refused.

*S. H. Phillips*, (Attorney General,) objected, on two grounds, 1st. That the facts proposed to be proved were outside of the record of the house ; 2d. That they amounted merely to a conversation between Burnham and the speaker of the house.

*Andrew*, for the petitioner. This is not an attempt to prove doings of the house outside of the record, nor to contradict the record of the house ; but to prove a fact important to the petitioner's rights, which could not be brought before the house. The record of the house is not within the petitioner's control. He proposes to show that he was treated as outside the bar of the house, and not permitted to interpose by his counsel at proper times to suggest his views of law and fact and pray the judgment of the house.

SHAW, C. J. The court are of opinion that this evidence is not admissible. It would be extending the inquiry too far, to introduce evidence of what occurred between the petitioner and a single member of the house, not the house acting in its aggre-

20 *

gate capacity. If it was the right of the party to be heard after his answers, and before his commitment, it appears by the record that no opportunity was afforded him to be heard. Beyond this he has no right to go.

*Andrew,* for the petitioner. 1. The power of this court is unlimited, to issue writs of *habeas corpus* in all cases, " except only persons committed by the governor and council, or by the senate or the house of representatives, in the manner and for the causes mentioned in the Constitution." Rev. Sts. *c.* 111, § 35. The only provisions of the Constitution which can be relied on by this respondent are these : " The house of representatives shall have authority to punish by imprisonment every person, not a member, who shall be guilty of disrespect to the house, by any disorderly or contemptuous behavior in its presence ; " " the senate shall have the same powers in the like cases ; " " provided that no imprisonment on the warrant or order of the senate or house of representatives, for either of the above described offences, be for a term exceeding thirty days." " And the senate and house of representatives may try and determine all cases where their rights and privileges are concerned, and which, by the Constitution, they have authority to try and determine, by committees of their own members, or in such other way as they may respectively think best." Const. Mass. *c.* 1, § 3, arts. 10, 11. The powers of the two houses of the legislature in Massachusetts being thus limited by the Constitution, are not to be determined by the decisions of English judges, refusing to examine into the right of either house of parliament to commit for a contempt, on the ground that the nature and power of the proceedings of the house of commons is not known to the court, but to parliament only. *Crosby's case,* 3 Wils. 204. Even in England, by the later decisions, the court may examine the sufficiency of the cause of commitment, if specially set forth in the return. *Burdett* v. *Abbott,* 14 East, 148–151. But under the Constitution of Massachusetts, it is not enough to aver in the warrant that the commitment is for contempt ; it must appear on the records of the house that there was sufficient cause for the commitment.

2. The warrant in this case, and the records of the house to which it refers, set forth the cause of commitment, and show that this petitioner committed no contempt which the house had authority to punish; nor was charged by the house or its committee with any such contempt, nor put upon his purgation for any such contempt; nor even did what the house in its final order and warrant charges him with having done. There never was any order of the house that this petitioner should produce any book or paper whatsoever; and the report of the committee, which is the foundation of the proceedings, shows only that he was " specially requested."

3. It appears upon the face of these proceedings that the house had no right to pass any such order, nor the committee any right to require the production of the books sought for, nor the house any right to punish their nonproduction. This petitioner had not been summoned by the committee, and proceeded against as a recusant witness; nor was he charged with being a public officer, called upon to produce a book or record belonging to the Commonwealth, for a parliamentary purpose. In England, an order for the production of books or papers for a parliamentary purpose must be passed by one of the houses of parliament, and not by a committee of either. And in either house of congress the custom is to call upon the president to furnish information through the proper subordinate officer, if in his opinion it is consistent with the public interest.

4. The petitioner is hardly a public officer; he is only a person to whom a monopoly had been granted of the business of selling spirituous and intoxicating liquors to city and town agents, on condition that the liquors should be pure, and that he should sell at an advance of only five per cent. on the cost, and he was obliged to keep a certain record. *Sts.* 1855, *c.* 215, § 2; *c.* 470, §§ 1–3. That record he had produced. His stock in trade and his other books were purchased with his own money, and were his own property; and he is no more liable to be compelled to produce such books than any druggist, or any licensed manufacturer or importer of liquors, who is suspected of having violated the liquor law.

5. The petitioner was before the committee simply as a person accused, invited to be present by the chairman of the committee hearing the accusation. The house of representatives, if they have the power to compel this production, cannot exercise it for any parliamentary purpose in this case; and even the house of commons cannot exercise such a power for any other purpose. Cushing's Parliamentary Law, § 1901. He was not before the committee as a witness; he was not summoned as such, and is not so represented in the report of the committee. His answers, made upon his purgation before the house, expressly declare that he was not there as a witness, but as a person defending himself against accusation, and those answers must be taken as true ; indeed, there has been no attempt to contradict them. A party accused need not say that to answer might criminate himself; he may keep silent. The record of the house shows that the question debated was whether Burnham should be turned over to the attorney general to be indicted as a felon, or whether he should be first punished for contempt in not furnishing the evidence to convict him.

6. There is no power in either house of the Massachusetts legislature, under the Constitution of the Commonwealth, to compel the attendance and testimony of any witness. The senate, perhaps, sitting as a court of impeachment, or the house as the grand inquest of the Commonwealth, might have the right as incident to their judicial capacity. By a custom of parliament, persons are compelled to attend before the house of commons or its committees, on the summons of the speaker; yet they never administer an oath, except when authorized by statute ; and there is no instance of a prosecution for perjury in testifying before the house of commons or its committees; though it is otherwise with the house of lords, which is a judicial body. The Rev. Sts. *c.* 2, § 10, authorizing any member of a committee of the legislature to administer oaths to persons examined before the committee, show that without it such a committee had no authority to swear witnesses who might refuse to be sworn. Before the *St.* of 1849, *c.* 208, there was no provision for paying fees to witnesses attending either branch

of the legislature ; and there is none now for the payment of witnesses before a committee.   The provision of the Constitu·tion of Massachusetts, *c.* 1, § 3, art. 10, authorizing either house to punish any person assaulting or arresting " any witness, or other person ordered to attend the house, in his way in going or returning," leaves the question open whether any person can be lawfully ordered to attend, without the authority of a statute passed by both houses, and approved by the governor.

7.  The sergeant at arms was ordered to commit Burnham " for a contempt in refusing to comply with the order of the special committee of this house," when there was no evidence that the committee had passed any order.   He was then put upon his trial for a disobedience to a supposed order of the com·mittee, and required to answer a set of interrogatories, and thus put upon his purgation at the bar of the house.   But the house, instead of taking his answers as true, undertook to punish him for " failing satisfactorily to answer" the questions of the house. It was not his duty to answer " satisfactorily," but to answer correctly.   And the record of the house contradicts the state-ment in the warrant that he had disobeyed the order of the house ; for no such order had been issued, and hardly could have been, pending his trial for the contempt of which he was accused by the committee.

8.  The Constitution limits the term of imprisonment to thirty days.   The general parliamentary law limits it to the time of the adjournment of the house.   The speaker's warrant in this case directs Burnham to be imprisoned twenty five days, unless sooner discharged by order of the house ; and the order recited in the warrant provides that whenever he is ready to produce his books and papers, he shall be brought before the house.   But if the house adjourns within twenty days, what shall be done with him ?   There will be no house to return him to.   If this court can discharge him then, because the warrant is bad on its face, it can discharge him now for the same reason.

9.  The warrant directs the sergeant at arms to take Burnham to the common jail.   By the Rev. Sts. *c.* 14, § 82, the sheriff must keep the jail himself, or by his deputy jailer ; and to no

other officer's custody thereof is any one bound to submit. The sergeant at arms having done his duty, by taking Burnham to the jail, and the sheriff and his deputy jailer having refused to receive him, and having indeed no warrant to justify them in receiving him, there was no longer any authority to hold him.

*S. H. Phillips,* (Attorney General,) for the sergeant at arms, cited *Burdett* v. *Abbott,* 14 East, 128, 132 ; *Stockdale* v. *Hansard,* 9 Ad. & El. 231 ; *Anderson* v. *Dunn,* 6 Wheat. 224 ; Constitution of Mass. *c.* 1, § 3, arts. 6, 10, 11 ; *Hiss* v. *Bartlett,* 3 Gray, 468 ; Rev. Sts. *c.* 2, § 10 ; *St.* 1849, *c.* 208 ; Jefferson's Manual, § 3 ; Cushing's Parliamentary Law, § 336 ; Rev. Sts. *c.* 143, § 1.

After a consultation of all the judges, the chief justice, on the 12th of November, briefly announced their unanimous conclusions, and said that a more extended opinion would be afterwards written. The resolutions of the court were immediately reduced to writing as follows by

HOAR, J.* The house of representatives is not the final judge of its own powers and privileges in cases in which the rights and liberties of the subject are concerned ; but the legality of its action may be examined and determined by this court. That house is not the legislature, but only a part of it, and is therefore subject in its action to the laws, in common with all other bodies, officers and tribunals within the Commonwealth. Especially is it competent and proper for this court to consider whether its proceedings are in conformity with the Constitution and laws, because, living under a written constitution, no branch or department of the government is supreme ; and it is the province and duty of the judicial department to determine, in cases regularly brought before them, whether the powers of any branch of the government, and even those of the legislature in the enactment of laws, have been exercised in conformity with the Constitution ; and if they have not been, to treat their acts as null and void.

---

* These resolutions were communicated to the house of representatives on the 17th of November. The death of the chief justice prevented the preparation of a fuller opinion.

Burnham *v.* Morrissey.

The house of representatives has the power, under the Constitution, to imprison for contempt; but this power is limited to cases expressly provided for by the Constitution, or to cases where the power is necessarily implied from those constitutional functions and duties, to the proper performance of which it is essential. The power is directly conferred by the Constitution, *c.* 1, § 3, arts. 10, 11; and the cases there enumerated are the only ones in which a sentence of imprisonment for a term extending beyond the session of the house can be imposed as a punishment.

We consider the object of these provisions to have been twofold: 1st. To extend the power beyond the limit which it had by common parliamentary law and custom, by authorizing the imposition of a sentence of imprisonment for a definite period, which should not be terminated by the ending of the session of the house; and 2d. To limit the power of punishing for constructive contempts, by expressly defining the cases in which it might be exercised. But we do not consider it as affecting the power of the house to secure by proper means the free and full performance of all its constitutional duties, and to exercise whatever powers are necessary to that end.

The house of representatives has many duties to perform, which necessarily require it to receive evidence, and examine witnesses. It is the grand inquest for the Commonwealth, and as such has power to inquire into the official conduct of all officers of the Commonwealth, in order to impeachment. It may inquire into the doings of corporations, which are subject to the control of the legislature, with a view to modify or repeal their charters. It is the judge of the election and qualification of its members. It has power to decide upon the expulsion of its members. It has often occasion to acquire a certain knowledge of facts, in order to the proper performance of legislative duties.

We therefore think it clear that it has the constitutional right to take evidence, to summon witnesses, and to compel them to attend and to testify. This power to summon and examine witnesses it may exercise by means of committees.

If a witness, duly notified or summoned, by the authority of the house, to attend before a committee, or before the house, refuses to attend, or, when present, and required to testify, or to do any other act which a witness may be lawfully required to do, refuses to obey the lawful commands of the house in that behalf, it is a contempt of the authority of the house; and, upon such refusal to attend, or if such refusal to testify occur before a committee, the house may compel his obedience by arresting him by the proper officer of the house, and bringing him before the house.

If, when before the house, he is contumacious and refuses to obey, without lawful excuse, such conduct renders him " guilty of disrespect to the house by contemptuous behavior in its presence," within the meaning of the tenth article of·chapter 1, § 3, of the Constitution, and he may be lawfully imprisoned for such contemptuous behavior, for a term not exceeding thirty days. Wilful disobedience to the commands of the house, without sufficient excuse or justification, in its presence, is such contemptuous behavior as the Constitution contemplates.

In the case before us, the petitioner was present before a committee of the house, which was charged by its authority with a lawful inquiry, and empowered to send for persons and papers. He was called upon to testify, and to produce certain books which were pertinent to the inquiry before the committee. No summons was necessary, because he was voluntarily present. He refused to produce the papers; and when brought before the house to answer for this disobedience, his only excuse or justification was that the papers were private. We know of no rule of law, which exempts any person from producing papers, material to any inquiry in the course of justice, merely because they are private.

No man is obliged to testify or to furnish evidence to criminate himself; but the petitioner did not place his refusal upon this ground. He was not a defendant charged with any crime. He expressly refused to express or form an opinion whether the production of the books could criminate him. The duty of the committee, as appears by the record of the house, was that of

general investigation merely. If the entries in the books which he was asked to produce, which were material to the subject of investigation, were shown to be mingled with others, not relating to the matters inquired of, which were private in their nature, such parts only as were relevant might have been exhibited, and the other protected from exposure.

The contempt thus committed in the presence of the house was a sufficient cause of imprisonment, under the express provisions of the Constitution, and justified a sentence of imprisonment for a fixed time. But, to avoid misconstruction, the court wish to add that they do not intend to decide that refractory behavior of a witness before a committee would not authorize the house to arrest and imprison him, as a means of compelling his obedience. Such imprisonment would, however, be limited by the duration of the session.

We think it no objection to the order and warrant, that they made the imprisonment conditional upon the submission and obedience of the refractory witness, the whole term being within the constitutional limitation.

By the Rev. Sts. *c.* 143, § 1, the common jails are to be used as prisons for the confinement of " all persons duly committed for any cause authorized by law." We think that the commitment to the jail was authorized by law, and that the petitioner was lawfully held by the sergeant at arms therein, in the custody of the sheriff or his deputy jailer, by virtue of the warrant of the house of representatives. *Petitioner remanded.*