The General Assembly of North Carolina at the session of 1895 passed the following concurrent resolution, which is printed on pages 502 and 503, Public Laws of North Carolina, session 1895, to wit:
"A Resolution in Favor of Mrs. Patty D. B. Arrington. Resolved by the House of Representatives, the Senate concurring:
"That A. A. Campbell, J. E. Bryan and J. T. Phillips, members of the House of Representatives from Cherokee, Chatham and Pitt counties, respectively, be and they are hereby appointed a committee of investigation to investigate all matters growing out of litigation, and all *Page 106 
other troubles between herself and husband and all other persons and things concerning or in any other way appertaining to her matters in connection with said litigation.
"The said committee shall have full and complete power and (148) authority to send for persons and papers and examine the same, and to administer oaths and examine witnesses, and with full power to punish for contempt for disobedience to any lawful order in as full a manner as is now vested in Judges of the Superior Court of the State. They shall find the facts from the evidence and report said facts, and also set out the evidence in full in said report, and make their report to the General Assembly, if it be possible to do so, before its adjournment, and if not, then said report shall be made to the Supreme Court.
"That the Treasurer of the State is hereby authorized to pay the necessary expenses of said committee while they are actually engaged in said investigation, and the said Auditor is hereby authorized to draw his warrant on the Treasurer for said amount.
"This act shall be in force from and after its ratification.
"Ratified 11 March, 1895."
The said session of 1895 of the General Assembly ended 13 March, 1895, by an adjournment sine die on that day, and the General Assembly has not been in session, in regular or extra session, since that day. The aforesaid committee made no report to the General Assembly of 1895 before adjournment, and did not organize to hear evidence until after the General Assembly had adjourned as aforesaid.
Subsequent to the adjournment of the General Assembly said committee met in the city of Raleigh and organized, and elected the plaintiff, A. A. Campbell, chairman thereof, and appointed the plaintiff, Thomas R. Purnell, attorney at law, counsel for the committee, deeming the same a necessary expense. The State Auditor, on presentation to him (149) of vouchers approved by the committee, issued his warrant on the Treasurer in words and figures set out in copies of said warrants hereto attached, marked Exhibits A and B. Said warrants were endorsed and presented to the defendant for payment at the Treasury Department of North Carolina, and the defendant as Treasurer refused and still refuses to pay the same, his contention being that by the terms of the aforesaid resolution the aforesaid committee was not authorized to sit and hear evidence and pursue the investigation provided in the resolution after the adjournment of the General Assembly, and had no authority at any time to employ counsel and incur expenses for fees therefor; and as to the compensation of the committeemen themselves, they, being members of the General Assembly, are entitled to only such compensation as is provided in section 28 of Article II, Constitution of *Page 107 
North Carolina, fixing the pay of members of the General Assembly when in regular or extra session. The plaintiffs are the owners of said warrants, T. R. Purnell being owner of Exhibit A, and the Commercial and Farmers Bank is owner of Exhibit B. There are other claims against the State for per diem and mileage of members of the committee and witnesses, service in keeping the minutes of the proceedings and taking depositions, and services as attorney, which have not been presented for payment; but it is agreed to submit the case as to the two foregoing warrants as a test case, the other claims to abide the decision of the court.
Upon the foregoing agreed facts, the court is asked to decide as matters of law the following:
"1. Has the State Treasurer any lawful right to refuse to pay any warrant drawn upon the State Treasury by the Auditor; or, in other words, must he in every case, without exercising any discretion on his part as to the legality of a warrant, pay it when properly endorsed and presented?
"2. Did the aforesaid committee have power and authority (150) under the aforesaid resolution to organize, sit together and hear evidence, and incur expenses to be paid by the State after the General Assembly had adjourned?
"3. Did the aforesaid committee have power and authority to employ counsel and incur expenses therefor to be paid for by the State?
"4. Is a member of said committee (being a member of the General Assembly) entitled to additional compensation for services on said committee after the General Assembly had adjourned, and if so, is he entitled to the same amount of per diem and mileage fixed by the Constitution for members of the General Assembly while the General Assembly is in session?
"5. Are the warrants set out in the statement lawful warrants?
"6. Are plaintiffs entitled to a writ of mandamus to enforce payment of said warrants?"
Exhibit A was as follows:
"RALEIGH, 26 June, 1895.
"THE STATE TREASURER: Will pay to Thos. R. Purnell, or order, forty dollars for services rendered Arrington Investigating Committee as Attorney to said Committee.
"Charge account Arrington Investigating Committee.
"ROBT. M. FURMAN,
"Resolution 11 March, Laws 1895. State Auditor." *Page 108 
Stamped on face: "Auditor's Department, Raleigh, 26 June, 1895, State of North Carolina."
Endorsed on back: "THOS. R. PURNELL."
 Exhibits B was as follows: "RALEIGH, 26 June, 1895.
"THE STATE TREASURER: Will pay to A. A. Campbell, or order, ninety-nine and 40-100 dollars, for per diem and mileage as member (151) committee appointed by General Assembly to investigate case Mrs. P. D. B. Arrington.
"Charge account Arrington Investigating Committee.
"Code N.C. Vol. I, sec. __________
"Code N.C. Vol. II, sec. _________
"Resolution 11 March, Laws 1895.
 "ROBT. M. FURMAN, "State Auditor.
 "Per T. P. JERMAN, JR., "Chief Clerk."
Stamped on the face: "Auditor's Department, Raleigh, 26 June, 1895, State of North Carolina."
Endorsed on back: "A. A. CAMPBELL."
Also endorsed: "Payment declined, W. H. Worth, State Treasurer."
His Honor adjudged as follows:
"It is considered and adjudged that the plaintiff, Commercial and Farmers Bank, is entitled to the writ of mandamus to enforce the payment by the defendant as Treasurer of the State of the warrant, a copy of which is attached to the case agreed and marked Exhibit B, and it is therefore adjudged by the court that the writ of mandamus issue in behalf of the said plaintiff, Commercial and Farmers Bank, and against the said defendant as public Treasurer, commanding the said public Treasurer to pay to the said plaintiff the amount of the said warrant mentioned in the case agreed, to-wit, $99.40. And it is further adjudged that the said plaintiff recover its costs, to be taxed by the Clerk against the said defendant.
"It is further considered and adjudged that the plaintiff, Thos. R. Purnell, is not entitled to the writ of mandamus to enforce the payment by the defendant as public Treasurer of the warrant, a copy of which is attached to the case agreed and marked Exhibit A, and that the said writ be and the same is not allowed to the said plaintiff, Thos. R. Purnell, in this case, and it is further adjudged that the said (152) defendant recover of the said plaintiff, Thos. R. Purnell, so much of his costs as are incurred by him by reason of the action of the said Thos. R. Purnell, to be taxed by the Clerk." *Page 109 
From so much of the judgment as decides that the Commercial and Farmers Bank was entitled to the writ of mandamus against him the State Treasurer appeals.
It is not controverted that the Legislature may create a special commission, as, for instance, to examine the Treasury accounts, and require that it shall consist of members to be designated from their own body and fix its compensation. The Code, sections 3360 and 3361. Such special commissioners are not disqualified to hold other offices, as members of the General Assembly, for instance, being expressly excepted by Article XIV, section 7, of the Constitution. Nor can it be denied that the Legislature has power to authorize a committee of its body to sit during vacation, and fix its compensation.
The question before us does not turn upon the power of the Legislature, which is undeniable, but upon the construction of their action. The uniform action of Congress and the Legislature, so far as our researches extend, has been to expressly authorize such committee to "sit in vacation." Inasmuch as the existence of all committees in the absence of legislation necessarily determines upon the adjournment of the body to which they belong, certainly there must be an explicit enactment that the sessions of the committee can be held after such adjournment, or at least a clear unmistakable implication to that effect from the words used in the act or resolution creating the committee. We do not find such to be the case here. The resolution (Laws 1895, p. 502) simply provides that the committee "shall find the facts from the (153) evidence, and report said facts and also set out the evidence in full in said report, and make their report to the General Assembly, if it is possible to do so, before its adjournment" — so far there is nothing to distinguish this committee from any other or to prolong its existence beyond the adjournment of the body to which it belonged. Then follow the only words which can be construed to give such power. "and if not, then said report shall be made to the Supreme Court." This confers no power on the committee to do any act after the General Assembly should adjourn except to make its report if it should not be ready. There is no explicit provision or clear implication that the committee should take any other action. Had the Legislature so desired, they would, according to precedent, have provided that the committee could sit in vacation, as they plainly provided that it could report in vacation, if necessary, which necessity seemed to be considered doubtful.
When a committee is empowered to sit in vacation, the resolution *Page 110 
must provide the compensation and for the expenses of the same, otherwise there is no authority of law for their payment. Certainly the members cannot draw per diem as members of the Legislature, for by the Constitution, Article II, sec. 28, the per diem is allowed only during the session of the General Assembly and is limited to sixty days, which the members of this committee had already drawn, as well as their mileage allowed them in such capacity. We must look to the resolution itself for any authority for payment of either compensation or expenses. That provides only for "the necessary expenses of the said committee while actually engaged in said investigation." Since, as stated (154) above, the meaning of the resolution was that the investigation should be made during the session, merely leaving the report to be filed (if it should be necessary) after adjournment, the necessary expenses would seem to be those of making the investigation, i. e., summoning and expense of witnesses, stationery, etc. But it is not required here to say what would be embraced in necessary expenses, for this warrant on its face is "for per diem and mileage." The per diem is compensation which is not provided for by the resolution, and the mileage is not necessary for members who are simply to remain over a short while to file a belated report, since they drew mileage as members to return home. Whether the reasonable board bills of the committee while detained in making up the report would not be included in "necessary expenses" is not before us, but probably that would be conceded. It was urged on one side that, this resolution being passed so short a time before adjournment, the Legislature must have intended the committee to sit during vacation; and on the other side that, the resolution having been introduced long before, its passage at this late hour indicated an intention that the committee should get rid of the matter by simply reporting that it could not investigate for lack of time. There is nothing in the resolution to show how long or short the investigation would be. We are authorized to make no surmises. The Legislature had power to authorize the committee to sit in vacation and to allow compensation to the members of it. They chose not to do so. They only authorized such continuance for the purpose of filing the report and necessary expenses. The failure to authorize per diem or some compensation is additional evidence that the committee was expected to finish its labors (except possibly as to filing the report) while the Assembly were still in session.
It was strenuously and it would seem seriously argued before (155) us that, the Auditor having given his warrant, the Treasurer had no choice but to pay it. The Auditor gives no bond, and if the Treasurer must pay any and every warrant that is presented to him the *Page 111 
State Treasury is at the mercy of the judgment of the Auditor, who might mistake or misconceive (as in this instance) the meaning of an act. The laws of this State do not bear that construction. The Auditor examines the items and the amounts and passes upon them, and can require the claimant to be sworn and examined as to the correctness of the account. The Code, section 3350 (17). If he finds the amount correct, and, further, that payment is provided for by law (The Code, section 3350, subsec. 7), he is required to draw his warrant on the Treasurer for payment thereof, but he is also required to put in the face of each warrant drawn by him the act authorizing such payment. This is to give notice to the Treasurer that he may act understandingly, for he is not required to pay any and every warrant which the Auditor may sign, but only "to pay all warrants legally drawn on the Treasurer by the Auditor." The Code, section 3356, subsec. 3. Should the Treasurer have reasonable doubts he should consult the Attorney-General, or if he think proper refuse payment, as in this case, and let the matter be determined by the courts. Our government is one of the checks and balances. It is not intended that payments out of the public funds should be made on the judgment of the public Treasurer alone or the Auditor alone. The Auditor examines as to the amounts and the performance of the work. It would seem that as to the facts his finding is conclusive. The Code, section 3350, subsec. 5. Certainly it is sufficient protection (in the absence of any collusion or notice of fraud) to the Treasurer. But the Auditor goes further. He examines as to whether the payment of the claim is authorized or provided for by law. If he so finds, his conclusion as to the law is not binding on nor is it a protection to the Treasurer. The Auditor is required to set out (156) the act providing for payment in the face of the warrant (The Code, section 3350, subsec. 9), and on the application of such statute the Treasurer must also pass before payment, and he has authority to take the opinion of the Attorney-General (The Code, section 3363, subsec. 4), or he can act without it at his own risk either in paying or refusing payment of a warrant which in his judgment is not authorized by any statute. It is thus that the law-making power hedges about the safekeeping of the public funds. The Treasurer's bond (The Code, section 3357) is a safeguard not only against his misuse or misappropriation of the funds committed to him, but against his payment of illegal claims, for the bond provides for the "faithful execution of the duties of his office," and one of those duties is to pay out no money except on warrant drawn by the Auditor and to pay all legal warrants drawn by him. Illegal warrants, not authorized by law, the Treasurer pays at his peril. The duty of the special commissioners appointed under section 3361 of *Page 112 
The Code is not limited merely to examining whether all warrants are signed by the Auditor, a very simple matter, but they are required by that section to examine also to see whether such payments were authorized by law, as well as by the Auditor. In directing the mandamus to issue there was
Error.
Cited: Purnell v. Worth, post, 157; Garner v. Worth, 122 N.C. 253,257; White v. Hill, 125 N.C. 200.
(157)