L. A. GARNER, Clerk of Superior Court of Carteret County, v. W.
H. WORTH, State Treasurer.

(Decided March 15, 1898.)

*Mandamus — State Treasurer — Collection of Debt
Against the State—Expenses of State Government—
"Oyster Claims."*

1. The Courts cannot direct the State Treasurer to pay a claim against
   the State, however just and unquestioned, when there is no
   legislative appropriation to pay the same; and when there is such
   an appropriation the coercive power is applied not to compel
   the payment of the State liability but to compel a public servant
   to discharge his duty by obedience to a legislative enactment.

2. Incidental bills of cost devolved upon the State by the failure of ac-
   tions authorized by it (other than those specified in Sections 742
   and 3373 of *The Code*) are not "expenses of the State government"
   within the meaning of Section 1 of Chapter 168 Acts of 1897,
   which provides that certain taxes shall be applied to the payment
   of such expenses.

3. Where the State Treasurer denies the correctness of a claim audited
   by the State Auditor and alleges fraud in the creation of the in-
   debtedness or that the services for which a warrant was issued
   were not rendered, mandamus will not lie to compel him to
   pay it, the question raised by such claim being for the Legislature,
   and not the Courts, to determine.

CIVIL ACTION by the plaintiff, as Superior Court clerk
of Carteret county, to obtain a *mandamus* directing the
State Treasurer to pay certain claims against the State,
heard before *Robinson, J.,* at October Term, 1897, of
WAKE Superior Court.

The complaint alleged that in certain actions (104 in
number) instituted in the Superior Court of Carteret
county by the State on relation of the Solicitor of the
6th Judicial District for the purpose of vacating certain
entries, licenses or grants, by authority of Section 4,

Chapter 287, Acts of 1893, non-suits were entered and it was adjudged that the State should pay the costs of such actions, and that the clerk's office should recover its costs, which were for services rendered the State in such actions by the officers of the said Court, and that said bills of costs, amounting in the aggregate to $759.75, had been duly audited by the State Auditor and a warrant duly issued thereon directing the State Treasurer to pay the same.

The defendant in his answer admitted the bringing of the actions as alleged and the entry of non-suits therein, but denied the liability of the State as follows:

"Defendant denies that the said costs were for services rendered the State in said actions, but defendant is informed and believes that a portion of the costs charged in said actions were for service of the writs of summons and the balance was claimed to be due the clerk of the Superior Court for service performed by him in said actions.

"Defendant is advised that said bills of costs so taxed by the Clerk are largely in excess of the amount due him by law, and defendant is advised and believes that service of summons was not made by the Sheriff of said county upon all of the defendants named in said action.

"2. That it is true that the bills of cost, in the aggregate, as taxed by said clerk, amounted to $759.75, but defendant is advised and believes that said bills of costs as so taxed, were not due.

"It is true, also, that the Auditor of North Carolina audited the same and issued his warrant, a copy of which warrant is set out in the fourth article of the complaint, but this defendant denies that the same was duly audited, or that the Auditor had authority to audit

said claims, and to issue his warrant upon the Treasury for their payment.

"3. That presentment, demand and refusal, as set out in article 5 of the complaint are admitted, and the said claims have not been paid."

Upon the hearing his Honor directed the mandamus to issue and defendant appealed.

*Messrs. Allen & Dortch* and *Simmons, Pou & Ward* for plaintiff.

*Messrs. McRae & Day* for defendant (appellant).

CLARK, J.: Providing for or directing payment of legal liabilities incurred by or on behalf of the State is a matter for the legislative, not the judicial branch of the government, for by virtue of its sovereignty the State cannot be sued. When the decision in *Chisholm* v. *Georgia*, 2 Dallas, 419, rendered it possible that the Federal Judiciary would violate this immunity of sovereignty, a wide-spread alarm promptly forced through the adoption of the XI Amendment to the Constitution of the United States forever prohibiting the Federal courts from entertaining jurisdiction of any action against any State brought by the citizens of another State, or citizens or subjects of any foreign State. The State Constitution also effectually bars any judicial action to enforce collection of liabilities against the State by providing in the Constitution Article XIV, Section 3, that "no money shall be drawn from the Treasury but in consequence of appropriations made by law", i. e. by legislative authority. The qualified jurisdiction given this court by Article IV, Section 9 is specially limited, the decision being "merely recommendatory" to the General Assembly, and the Court being forbidden

to issue any process thereon. *Baltzer* v. *The State*, 104 N. C., 265, 277.

The plaintiff's claim against the State is for bills of costs taxed against the State in actions instituted under the authority of the Act of 1893, Chapter 287, Section 4. In *Blount* v. *Simmons*, 119 N. C., 50, the State was adjudged liable for such costs, but the Court was careful to add that "the application to the Court cannot result in a judgment for the claim of the citizen. . . . . How the judgment will be satisfied is a question not now before us." There is a wide difference between the liability of a State and the right to enforce it by judicial process. Take an admittedly valid State bond: It is issued by authority of the General Assembly, signed by the Governor and public Treasurer and evidenced by the broad seal. But the judicial branch of the government cannot direct a mandamus to the Treasurer for the payment of principal or interest. The plaintiff's claim, based upon a warrant of the Auditor, can certainly be of no higher dignity. Indeed, the Auditor's warrant would be no protection to the public Treasurer unless there was that "appropriation" to pay it, which is required. Constitution, Article XIV, Section 3; *Bank* v. *Worth*, 117 N. C., 146. It is only when the legislative department has appropriated a certain fund to the payment of a liability incurred or to be incurred and the Auditor or Treasurer refuses to obey the legislative mandate that the Court can issue its mandamus to compel him to do so. The Court cannot direct him to pay a claim, however just and unquestioned, when there is no legislative appropriation to that purpose.

This raises the sole question in this case. Has the General Assembly made any appropriation to pay this

claim? This is not done by simply authorizing the liability to be incurred, for if so, judicial process to enforce payment of any and all State indebtedness could be invoked, and the State forced to pay the same by the simple process of issuing a mandamus to the custodian of the State's money instead of an execution to the Sheriff. The only authority that can be invoked as a legislative appropriation to pay this liability is the usual provision in the Revenue Act, to be found in Acts of 1897, Chapter 168, Section 1—"The taxes hereinafter designated are payable, etc., and shall be collected and assessed, etc., and applied to the payment of the *expenses* of the State government, the appropriations to charitable and penal institutions, other specific appropriations, and the interest on the 4 per cent consolidated debt of the State." It is argued that, as the State authorized these actions to be brought, and as the legal liability to pay the costs devolved upon the State on the failure of the actions (*Code*, Section 536), therefore this claim is a part of the "expense of the State government." . This reasoning would make any other liability incurred by the authority of law an "expense of the State government." It will be noted that the Act above quoted especially recognizes that appropriations to charitable and penal institutions are not a part of the "expenses of the State government," but come in with "*other* specific appropriations" and the interest on the public debt. If these are no part of the State governmental expenses, upon what ground can we view as "expenses of the government" costs unexpectedly devolved upon the State by the failure of actions incidentally brought by its permission in the Superior Court by the Solicitor upon the affidavits of five inhabitants. If this is an "expense of the State government," where

shall we draw the line? Such costs are, in truth, simply an unforeseen liability for which the General Assembly made no appropriation, and now that it has been incurred to the extent of $6,000 or $7,000, it is for the Legislature, not the Courts, to make provision for its payment. Now there are Court costs for which the General Assembly has seen fit to provide. *The Code*, Section 3373, provides that costs in civil actions brought by or against any of the officers of the State, when such action is brought or defended pursuant to the advice of the Attorney General and the same is decided against such officers, shall be paid by the State Treasurer upon the warrant of the Auditor, and Section 742 provides that costs incurred by any County in prosecuting charges of bribery against any State officer, etc., shall be paid in like manner. This makes such costs an expense of the State government, but these Sections do not cover the costs embraced in the present action. *Expressio unius, exclusio alterius.* It is not necessary in this case to define what are "expenses of the State government." It is sufficient to say that incidental bills of costs devolved upon the State by failure of actions authorized by it are not such expenses when they are not embraced in the class of cases provided for by *The Code*, Sections 742 and 3373. Instead of Court costs being an expense of the State government ordinarily when the State incurs liability for Court costs, the statute directs payment by the County (*Code*, Section 739, 740, 747) but those Sections do not cover these costs. (*Blount* v. *Simmons*, 118 N. C., 9) and not being within Sections 742 and 3373, there can be no payment unless the Legislature sees fit to provide for it. *Merrimon* v. *Commissioners*, 106 N. C., 369; *State* v. *Shuffler*, 119 N. C., 867; *Guilford* v. *Commissioners*, 120 N. C., 23. The Revenue Act

recognizes that the expenses of charitable and penal institutions and the interest on the public debt are not a part of the governmental expenses. There are many other liabilities authorized by law for which specific appropriations are made before they are incurred. There are many others which are left to be provided for after they are incurred, and the present claim is one of them, and, like all such, provisions for its payment must be sought at the hands of the General Assembly and not by invoking the coercive powers of this branch of the government against the officer in whose hands the legislative department has placed the funds it has raised and appropriated. He can pay them out only on leg-·islative appropriation and the Court can compel him to pay only when he refuses to execute the legislative mandate—and this not to coerce payment of a State liability but to compel a public servant to discharge his duty by obedience to a legislative enactment.

And there is still another ground: The Treasurer denies the correctness of the claim. If there was an appropriation for this specific claim or of a specific sum, a mandamus might issue to the Treasurer to pay it. But in the absence of such legislation, the judgment taxing the costs is no more obligatory upon the State as to the amount taxed than is our ruling that the State is liable for the costs, the judgment having only a recommendatory effect either as to amount or liability. *Bledsoe* v. *State*, 64 N. C., 392; *Clements* v. *State*, 77 N. C., 142. Besides, it was admitted that the costs in this action have not been reduced to conform to the ruling of this Court in *Blount* v. *Simmons*, 120 N. C., 19, having in fact been taxed before that decision was rendered. While the auditor's warrant is usually a protection to the treasurer as to the correctness of the amount (though not

as to the legal duty to pay. *Bank* v. *Worth*, 117 N. C., 146, 155). Here, the treasurer in his answer denies the correctness of the bill and also avers that the claim has not been duly audited by the former auditor, who issued this warrant. Whether the Court under such circumstances can ever invade the province of a co-ordinate department (Constitution, Article I, Section 8), adjudge that the claim is just and was duly audited and direct the public treasurer to pay, it is certain it can not do so in a case like this where there is a contest as to the rendition of the services charged for and there is no appropriation by the Legislature. To do so would not be to compel an officer to perform a purely ministerial duty, but to try a case, involving disputed facts, with the State as the real defendant. *Reynolds* v. *State*, 64 N. C., 460; *Reeves* v. *State*, 93 N. C., 257. The only investigation as to facts which we could make would be in an original proceeding as prescribed by *The Code*, Section 948, which authorizes no judgment. The taxation of costs is only a ruling that such and such services under the statute entitles the officer to such and such fees, but are not conclusive on the State that those services were rendered, as would be the case as to any party against whom the Court could render a judgment. Even when a claim is "an expense to the State government" or other subject of appropriation, as an expense of a charitable or penal institution, for instance, the Court can only issue a mandamus when the amount is admitted or ascertained or stated by the statute, as a salary or other sum certain, i. e. when the act to be done is merely ministerial (*Cotten* v. *Ellis*, 52 N. C., 545, 550; *Kendall* v. *U. S.*, 12 Peters, 834; *Boner* v. *Adams*, 65 N. C., 639; *Burton* v. *Furman*, 115

122—17

N. C., 166) and not even then unless the money is in the treasury for that purpose. The courts cannot coerce the payment of a claim against the State as if it were a private citizen, but the matter must be left to the legislative department, whose duty alone it is to ascertain and provide for payment of claims against the State. As was said by Pearson, C. J., in *Railroad* v. *Jenkins, Treas.*, 68 N. C., 499,. 504: "This excludes the idea that any creditor of the State can have a mandamus against the treasurer, for there is no express command of the General Assembly that the public treasurer shall pay all the debts of the State, and if a claim is presented to him it must be left to his official discretion as to the time, condition of the treasury, etc., when he will pay it; the Court could not interpose in such a case without encroaching upon the powers of the executive department of the government."

Reversed.