The record in this case has not been submitted to me. My decision in Ex parte Hague, 104 N.J. Eq. 31; 144 Atl. Rep. 546,
of which the present case is a sequence, is dispositive as to this court of the matters in controversy herein other than the questions — (1) whether joint resolution No. 13, adopted by the legislature of the year 1928 had any vitality after the final adjournment of said body other than to enable the committee appointed thereunder to report; (2) whether the legislature of the year 1929 was authorized to amend and supplement the aforesaid resolution; *Page 136 
(3) whether the petitioner herein may be compelled to answer questions propounded to him, which he declined to answer, relating to his private affairs and property. I am of the opinion that each of the aforesaid questions must be answered in the negative. The legislative power vests in a senate and general assembly. State Const., art. 4 § 1 ¶ 1. Said bodies meet separately on the second Tuesday in January, at which time of meeting the legislative year commences. State Const., art. 4 §1 ¶ 3. Neither of said bodies are continuous; they expire annually. State v. Rogers, 56 N.J. Law 480 (at p. 631). Although the senate — providing an always-existent membership — may be considered as having a permanent existence, it does not have continuous vitality. State v. Rogers, supra (at p.622). It is only when the senate and general assembly are lawfully assembled that they constitute the legislature — the law-making body of the state. Each of said bodies are subject, in their action, to constitutional limitations and laws, in common with all other bodies, officers and tribunals within the state.In re Gunn, 50 Kan. 155; 19 L.R.A. 519; Kilbourn v. Thompson,103 U.S. 168; Burnham v. Morrissey, 80 Mass. 226. All powers of the legislature, as such, cease upon the final adjournment of said body. All powers delegated to a committee appointed by a joint resolution of the senate and general assembly also cease.Fergus v. Russel, 270 Ill. 304, 343, 344; Bank v. Worth,117 N.C. 146. The legislative committee appointed under the aforesaid joint resolution had no authority after the final adjournment of the 1928 legislative session, except to make a report. Bank v. Worth, supra. The legislature constituted for the year 1929 was without power to amend or supplement the aforesaid joint resolution. The power of the legislature is distinguishable, in this respect, from its conceded authority to amend or supplement a law. A joint resolution adopted by a state legislature is not a law. It is of less solemnity than a law, and clearly distinguishable therefrom. I alluded in my aforesaid decision under captions — as to joint session (pages 47 to 49),as to joint resolution (pages 50 to 66), as to jointinvestigating committee *Page 137 
(pages 66 to 71), and as to political activities of thelegislative committee (pages 71 to 75), to the lack of authority claimed for and in behalf of the legislature and its investigating committee and the joint session. I deem it unnecessary to particularly amplify what I stated therein other than as to joint session and as to violation of the petitioner's constitutional exemption from such inquisition as to his private affairs and property as he was subjected to it by the jointsession. In People v. Webb, 5 N.Y. Supp. 855, it is said to be a well-settled rule that the legislature of a state cannot, nor can any committee appointed by it, constitute itself into a court of general jurisdiction or a grand inquest, for the purpose of inquiring into the conduct of a citizen not a member of its body, nor can it compel the answer of a witness on an inquiry or investigation before it except for legislative purpose or in acquiring information upon which to predicate remedial legislation. The investigation carried on by the committee designated in the aforesaid joint resolution, and by the joint session aforesaid, was in the nature of a judicial
investigation, and therefore unlawful. A legislature, and afortiori a joint session or a committee, as in the case subjudice, cannot violate the constitutional rights of a person by conducting a public investigation of charges made against such person, either directly or by innuendo — under the pretense or cloak of its power to investigate for the purpose of acquiring information for legislation, whether the investigation be for the purpose of laying a foundation for the institution of criminal proceedings, for the aid and benefit of grand juries in finding indictments, for the purpose of intentionally injuring such persons, or for any ulterior purpose. Kilbourn v. Thompson,supra; State v. Guilbert, 75 Ohio St. 1; Greenfield v.Russel, 292 Ill. 392. The record of proceedings before thejoint session held June 24th, 1929, discloses that counsel for the joint committee, designated as counsel to the joint session, sought in his examination of the petitioner as a witness to discover whether dishonesty was practiced by him in connection with certain matters mentioned. The petitioner denied such insinuations and imputations *Page 138 
as were implied in the questions propounded to him in connection with such matters. Not content with such denial counsel propounded certain other questions which the petitioner regarded as violative of his constitutional right of privacy as to his personal affairs and property, and relying upon such right he declined to answer such questions. His declination was justified. Although the senate and general assembly as separate bodies did not have the petitioner before them, they adopted aconcurrent resolution (a series of such resolutions containing a series of questions propounded to the petitioner were adopted, and inasmuch as such resolutions are similar except as to the question referred to therein, I will not refer to them severally herein) reciting a question propounded to the petitioner at thejoint session which for reasons above stated he declined to answer, and reciting also that the petitioner's refusal to answer was a contempt of the senate and of the general assembly of the State of New Jersey, and requiring his imprisonment until such time as he should make known to the chairman of the jointcommittee in writing that he was willing to answer said question. Even though said bodies were empowered to adjudge the petitioner to be in contempt of the legislature (I am of the opinion they were not empowered so to do) they certainly should have required his appearance before them for questioning before they could so adjudge. The joint session was without authority to require the petitioner to answer the questions propounded to him, which he declined to answer, all of which related to his personal private affairs and property. The legislature itself, as such, lacks such authority. Neither the senate nor the general assembly possesses, or can be invested with, such authority.Interstate Commerce Commission v. Brimson, 154 U.S. 447, 478,
citing Kilbourn v. Thompson, 103 U.S. 168, 190. See, also,In re Barnes, 204 N.Y. 108. It is axiomatic that citizens are subject to the duty to appear and testify and produce books and papers in a court of law when duly subpoenaed in a case pending therein, when such disclosure is relevant and material to a judicial determination of such case; but they are not subject *Page 139 
to a like duty before a legislative investigation committee. The fact that the interstate commerce commission, under the federal statute creating said body, may require production of books and papers of a citizen in a proper proceeding before said body, as has been held in divers cases, is inconsequential in the mattersub judice for the particular reason that such decisions as justify such action relate to regulatory and thereforequasi-judicial bodies, and not to mere investigating bodies. None of the reported cases and none of the text writers have hitherto undertaken to declare a doctrine that a legislature anda fortiori a committee appointed by legislative bodies, may so far transcend the liberty of a citizen as to compel him to disclose his private affairs to the scrutiny of such public body or to a committee thereof. The constitutional system of checks and balances to which I alluded in my aforesaid decision at pages 47, 48, 49, cannot be evaded by either the senate or general assembly resorting to the medium of meeting in joint session for such inquisitional purposes as obvious in the instant case. The very purpose of resorting to joint session is to evade the check which the two bodies — senate and general assembly — constitutionally hold on each other, and to permit said bodies to act and vote as a single body. For the courts to countenance such evasion of a fundamental part of our constitutional form of government would be to countenance a departure therefrom. It is the duty of courts to be watchful for the constitutional rights of a citizen and against any stealthy encroachments thereon. Their motto should be obsta principiis. Boyd v. United States,116 U.S. 616. I referred in my aforesaid decision to the limited constitutional right of the senate and general assembly to assemble in joint meeting. Such right cannot be augmented by the legislature. As I stated therein (page 49): "The constitution should be strictly adhered to. Departure therefrom at the whim of partisans would tend to circumvent the interdicts and requirements of that glorious instrument upon which the public weal and the liberty and security of our citizens is founded." The case sub judice is replete with unmistakable evidence that the legislative investigating *Page 140 committee, and the joint session as well, pursued a course ofinvestigation designed ostensibly to pry into the petitioner's private business affairs, to besmirch his character and reputation, to stigmatize him before the public as recreant to the trust and confidence reposed in him by the electorate of Jersey City, whom it appears have elected him for four successive terms of four years each as one of the governing body of said city (the city of Jersey City is governed by a board of commissioners — P.L. 1911 p. 462, as amended), to minimize if not in fact destroy his influence as a dominant leader of a political party, and, by innuendo, to impute to him violations of law which if true would subject him to criminal prosecution. It bristles also with clear manifestation of partisan activities of the investigators. It clearly demonstrates that the investigators sought and heard ex parte statements of hearsay,innuendos, and the like, in disregard of rules of evidence, all, or practically all of which prompted by parties hostile to the petitioner, whose aim was more the gratification of personal enmity than in the interests of the public at large. See, also, the report of the joint committee to the legislature, dated April 23d 1929, under the caption, "Mayor Hague." That such will not be countenanced by our courts is clearly manifested by decisions to which I will herein refer. In In re Pacific RailwayCommission, 32 Fed. Rep. 241 (at p. 263), Judge Sawyer said: "A general, roving, offensive, inquisitional, compulsory investigation, conducted by a commission without any allegations, upon no fixed principles, and governed by no rules of law, or of evidence, and no restrictions except its own will, or caprice, is unknown to our constitution and laws; and such an inquisition would be destructive of the rights of the citizen, and an intolerable tyranny. Let the power once be established, and there is no knowing where the practice under it would end." And on page 269: "* * * more especially when called into exercise in times of political excitement, or under the influence or partisan zeal or passion? In the close adherence to well-settled principles of law, founded upon the just observance of the rights of all parties, will we find the greatest safety *Page 141 
alike to public and private rights?" I regard the aforesaid quotation as particularly applicable to the investigation by the legislative committee and by the joint session, supra. In the case above cited Justice Field (at page 251) said: "Intrusion into, and compulsory exposure of one's private affairs and papers, without judicial process, or in the course of judicial proceedings, * * * is contrary to the principles of a free government, and is abhorrent to the instincts of Englishmen and Americans." And at page 250, referring to authority conferred by congress upon an investigating commission, he said: "But in its inquiries it is controlled by the same guards against the invasion of private rights which limit the investigations of private parties into similar matters. In the pursuit of knowledge it cannot compel the production of the private books and papers of the citizen for its inspection, except in the progress of judicial proceedings, or in suits instituted for that purpose, and in both cases only upon averments that its rights are in some way dependent for enforcement upon the evidence those books and papers contain. Of all the rights of the citizen, few are of greater importance or more essential to his peace and happiness than the right of personal security, and that involves, not merely protection of his person from assault, but exemption of his private affairs, books and papers from the inspection and scrutiny of others. Without the enjoyment of this right, all other rights would lose half their value." In the case ofInterstate Commerce Commission v. Brimson, supra, the court said: "We said in Boyd v. United States, 116 U.S. 616, 630 — and it cannot be too often repeated — that the principles that embody the essence of constitutional liberty and security forbid all invasions upon the part of the government and its employes of the sanctity of a man's home and the privacy of his life." InBoyd v. United States, supra, the court declared: "Any compulsory discovery by extorting the party's oath, or compelling the production of his private books and papers, to convict him of a crime, * * * is contrary to the principles of a free government. It is abhorrent to the instincts of an American. It may suit the *Page 142 
purposes of despotic power, but it cannot abide the pure atmosphere of political liberty and personal freedom." It is said by Justice Field, In re Pacific Railway Commission, supra (atp. 251), that while the language thus used had reference to the compulsory production of papers as a foundation for criminal proceedings, it is applicable to any such production of private books and papers of a party otherwise than in the course of judicial proceedings, or a direct suit for that purpose. It is therefore applicable to the case sub judice. The learned justice also said, referring to the case of Kilbourn v.Thompson, supra: "This case will stand for all time as a bulwark against the invasion of the right of the citizen to protection in his private affairs against the unlimited scrutiny or investigation by a congressional committee." It is incomprehensible to me that counsel for the respondent herein should argue, as he does, in the face of the facts in this case, that information sought from the petitioner by means of answers to the questions propounded to him, which he declined to answer for the reasons above stated, was intended for legislative purposes. If, as appears to me from the record, the inquisition of the legislative committee and the joint session was to ascertain whether the laws of the state had been violated by the petitioner, or whether the petitioner as one of the governing body of Jersey City might be chargeable with malfeasance, misfeasance, non-feasance, or other offense which might subject him to criminal prosecution, he certainly could not be compelled to testify with respect thereto. Counselman v. Hitchcock,142 U.S. 547. Furthermore, such matters could only be inquired into by a grand jury or a court legally constituted for the purpose. It was not within the province of the legislature, the senate or general assembly, the joint session, or the investigation committee, to make such inquiry. I admitted in evidence in the case sub judice, over the objection of counsel for the respondent, matter which I deemed admissible. I had in mind that if any portion of such matter was really inadmissible in evidence the appellate court could readily deal therewith on a review of my decision. Where, as in this case, the court *Page 143 
decides the fact and the law without the intervention of a jury, the appellate court may disregard such evidence as may have been improperly admitted, and decide the case as if such objectionable matter was not in the record. See Sinclair v. United States,279 U.S. 749, citing United States v. King, 7 How. 833, 854,855; 12 L.Ed. 934. I repeat herein what I stated in my aforesaid decision (at p. 88) that I deem it unnecessary to refer to or comment upon the cases cited therein by counsel for the respondent, such as People v. Keeler, 99 N.Y. 463; Anderson
v. Dunn, 19 U.S. 204; In re Chapman, 166 U.S. 661; Marshall v.Gordon, 243 U.S. 521; McGrain v. Daugherty, 273 U.S. 135, for the reason that they are inapplicable to the case sub judice.
They relate to action taken by a house of the legislature (and congress) for action by such house. The case at bar is not such. None of the aforesaid cases militate against anything which was declared by the United States supreme court. Kilbourn v.Thompson, supra. Nor does the case of Sinclair v. UnitedStates, supra, in anywise support the contention of counsel for the respondent herein. There is no question involved herein as to the right of either house of the legislature to make proper inquiry of a witness before such body. I conclude and adjudge that the proceedings upon which the warrant for the petitioner's arrest and detention is based, are illegal, and that said warrant is illegal, and therefore void. I will advise an order accordingly, and for the discharge of the petitioner and the bond entered into by him upon the return of the writ of habeascorpus issued herein. *Page 144