[Nos. 15417, 15418.  Department One.  July 24, 1919.]

THE STATE OF WASHINGTON, *on the Relation of E. L. French, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Pliny L. Allen, Plaintiff,* v. C. W. CLAUSEN, *as State Auditor, Respondent.*[1]

CONSTITUTIONAL LAW (3)—CONSTRUCTION. The provisions of the constitution are to be construed in the common and natural view, to determine, if possible, the intention of the law makers.

OFFICERS (2)—WHO ARE OFFICERS. A member of the industrial code commission created by Laws 1919, p. 566, holds a civil office, within Const., art. 2, § 13, prohibiting the appointment or election of any member of the legislature, during the time for which he is elected, to any civil office created during his term; the commission having power to make investigations, hold hearings, and make reports to the legislature as to the evils existing in industrial life, each member receiving compensation for each day's services in addition to expenses.

STATUTES (9)—PARTIAL INVALIDITY. The invalidity of the provision in Laws 1919, p. 566, creating the industrial code commission, that two of its five members must be members of the legislature, does not affect the validity of the balance of the act or prevent the Governor from appointing some other citizens who are eligible.

Applications for writs of mandamus, filed in the supreme court June 18, 1919, to compel the state auditor to issue warrants in payment of expenses incurred by the industrial code commission.  Granted as to one application; denied as to the other.

*W. V. Tanner,* for relators.

*The Attorney General* and *John H. Dunbar,* for respondent.

MITCHELL, J.—These two causes, being so nearly alike, may be properly considered in one opinion.

[1]Reported in 182 Pac. 610.

Chapter 184, Laws of 1919, p. 566, provides that the governor shall appoint a commission of five citizens of the state, one of whom shall be a member of the senate and one a member of the house of representatives of the legislature of 1919, to be known as the "Industrial Code Commission." The act provides that each commissioner shall receive compensation of ten dollars ($10) for each day actually employed in the work of the commission, and shall be allowed necessary expenses incurred in the performance of his duties. The duty of the commission is defined in § 2 of the act as follows:

"It shall be the duty of the industrial code commission to investigate the evils existing in industrial life and the means and methods of remedying the same, and to prepare and present to the legislature of the state of Washington at its next regular session a proposed act, or acts, upon all such subjects, including an act for the prevention of strikes, lockouts and boycotts, and the orderly settlement of industrial disputes."

Further, the act empowers each of the commissioners to administer oaths and to issue subpoenas for the attendance of witnesses and the production of books and papers in any inquiry, and provides that witnesses shall be entitled to fees and mileage; and an appropriation of twenty-five thousand dollars ($25,000) out of the general fund of the state is made for the purpose of carrying out the provisions of the act. In making up the industrial code commission, pursuant to the terms of the law, the governor appointed Honorable E. L. French, a member of the legislature of 1919, relator in cause No. 15417, as one of its members. Upon the organization of the commission, he attended one of its meetings, and necessarily expended, in the way of personal expenses, the sum of six dollars and fifty-four cents ($6.54); and, although proper vouchers

for his compensation and expenses were presented to respondent, as state auditor, and demand made for the issuance and delivery of a warrant in payment thereof, the respondent refused to issue a warrant for such sum, or any part thereof. Application is made for a peremptory writ of mandamus commanding respondent to issue and deliver such warrant.

Concerning the other cause, No. 15418, after the commission was organized, it purchased and received from Pliny L. Allen, relator, one filing cabinet of the agreed value of eighty-five dollars ($85), for the use of the commission in the performance of its duties; and, although a proper voucher for the sum was presented to respondent, as state auditor, and demand made for the issuance and delivery of a warrant therefor, respondent refused to issue the same. Application is made for a peremptory writ of mandamus commanding respondent to issue and deliver such warrant. To the petition in each case, respondent has filed a general demurrer, which presents the question of the validity of the act creating the commission, and particularly of that part of it relating to the appointment of members of the legislature of 1919, as coming in conflict with § 13, art. 2, of the state constitution, as follows:

"No member of the legislature during the term for which he is elected shall be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

On the contrary, relators contend the act does no violence to any provision of the constitution. They say it does not contravene the particular section of the constitution relied on by respondent, because appointment to membership upon the industrial code commission is not appointment to a civil office; and relator Allen further contends that, conceding the provision relating to

appointment of members of the legislature to be invalid, such provision may be ignored and the remainder of the act permitted to stand. Confining the inquiry solely to the effect of § 13, art. 2, of the constitution upon the act, it would follow that, if relators are right in the first contention, then each of them would be entitled to the writ applied for; but if it be determined that the only available contention interposed is the further one made by relator Allen, then he only would be entitled to the writ.

It is not claimed the act does not create a civil office, as contradistinguished from a military or other kind of office, but that the act does not create an office at all in the sense in which the word is used in the particular provision of the constitution. The difficulty of formulating a definition of the word "office," at once precise, comprehensive and exclusive, must be considered as well-nigh insuperable. The definitions of the word, as given by the text writers and courts, are not in entire harmony. Such situation, however, proceeds not so much from any conflict of opinion as it does from diversified points of view. Concerning a difficulty somewhat similar, while writing of the Federal constitution as bearing upon the validity of a legislative act, the chief justice in the famous case of *McCulloch v. Maryland*, 4 Wheat. (17 U. S.) 316, 414, said:

"Such is the character of human language, that no word conveys to the mind, in all situations, one single definite idea; . . . Almost all compositions contain words which, taken in their rigorous sense, would convey a meaning different from that which is obviously intended."

Counsel for relators calls attention to a number of general definitions of the word "office," as given by the authorities, in the light of which he contends the position as a member of the commission is not an

office.   With one exception we take no occasion to
enumerate or analyze those cases; for certainly the
important thing here is not to ascertain some general
definition of the term "office," but its meaning in the
sense in which it is used in § 13, art. 2, of the constitu-
tion.   The exception we make refers to the case of
*Mulnix v. Elliott,* 62 Colo. 46, 156 Pac. 216, which re-
lators claim is in point.   The court had under consider-
ation in that case an act of the general assembly pro-
viding for the appointment of a board of seven mem-
bers to be known as the "Survey Committee of State
Affairs," consisting of two senators, one of whom
should be the president of the senate and one to be
appointed by the president of the senate; two repre-
sentatives, one of whom should be the speaker of the
house and one appointed by the speaker of the house;
and three citizens not members of the legislature,
appointed by the governor.   The act made it the duty
of the committee to study the state institutions, boards
and departments with a view of making recommenda-
tions for securing greater economy and efficiency in
state government, among other ways, by reporting,
from time to time, its findings and recommendations
to the governor, who, in turn, should submit the same,
together with his recommendations, to the next regular
session of the legislature for any desirable legislation.
No compensation was provided for the members of the
committee, but an appropriation of one thousand dol-
lars ($1,000) was made to pay their actual expenses
while engaged in the work.   After the committee was
organized, one of its members, a state senator, insti-
tuted the action to compel the state auditor to issue to
him a warrant for personal expenses incurred as a
member of the committee.   The court in its decision
called attention to art. 3 of the constitution of Colo-
rado, dividing the powers of government into the legis-

lative, executive and judicial, and prohibiting a person charged with the exercise of powers belonging to one department from exercising those belonging to either of the others, except as in the constitution expressly directed or permitted; and also noticed § 8, art. 5, of the Colorado constitution, viz.: "No senator or representative shall, during the time for which he shall have been elected, be appointed to any civil office under this state"; both of which provisions were relied on by the state auditor.  The analysis of the act given by the court is devoted solely to the ascertainment if the act conferred any executive powers upon the committee, at the conclusion of which it is simply said of the act: "It does not violate either of the constitutional provisions invoked."  The opinion was by a divided court, three of the seven judges dissenting.

For our present purpose, we find no help in the Colorado case, for the reason that, in the opinion, the court, after stating the contentions of the state auditor to the effect, first, if the committee be regarded as a joint legislative committee, the act was void, being in conflict with the article of the constitution upon the subject of the distribution of powers, in that the duties and powers attempted to be conferred by the act were executive and not legislative; and second, if regarded as creating not a legislative committee but an executive commission, the act violated the provisions of the constitution precluding a member of the legislature from holding any other civil office in the state during the time for which he had been elected, immediately and specifically stated:  "In considering these propositions it is therefore only necessary to determine, and all we do determine, is whether the duties imposed and powers conferred upon the committee by the act are executive."

Statutes are enacted by legislators of experience, or at least by persons of affairs, while in the enactment of a constitution the public are the legislators. Unless otherwise provided, precision may be exacted in determining the meaning of the language of a statute, while generally, in the case of a constitution, its provisions should be construed in the common and natural view; always the most important thing being to determine, if possible, what the real intention of the lawmakers was. Discussing the subject, this court, by Judge Dunbar, in the case of *State ex rel. Chamberlin v. Daniel,* 17 Wash. 111, 49 Pac. 243, quoted with approval as follows:

" 'A constitution,' says Mr. Endlich in his Interpretations of Statutes, § 526, 'is intended for the benefit of the people and must receive a liberal construction.' 'The principle of strict construction would frustrate important provisions in every newly constructed frame of government.' Such is the general rule, the keynote, as it were, of all interpretation of constitutional provisions, and is in harmony with the principles already discussed.' "

Section 13, art. 2, of the constitution does not prohibit a member of the legislature, during the term for which he was elected, from being appointed or elected to office, generally, in the state. The preclusion extends only to any office which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected. Of course, the purpose of the rule is obvious. It is as was stated in *Fyfe v. Kent County Clerk,* 149 Mich. 349, 112 N. W. 725, in construing a similar constitutional provision, as follows:

"The purpose of these provisions is 'to preserve a pure public policy,' or, as we said in *Ellis v. Lennon,* 86 Mich. 468, speaking through Justice McGrath, 'to prevent officers from using their official position in the

22—107 WASH.

creation of offices for themselves or for the appointment of themselves to place.' "

The commission is created by, and its members derive their powers from, an act of the legislature. The term of service is fixed. It uses the process of the state to compel the attendance of witnesses and the production of books and papers. Its members administer oaths. It has at its disposal twenty-five thousand dollars ($25,000) of the state's money for carrying out the purposes of the act. On behalf of the state, of its own independent motion and will, it makes investigations and holds hearings within the state when, where and for whatever length of time it pleases. Its defined duties are under the direction and control of no superior. And each member, in addition to his expenses, receives compensation for each day's actual service.

In oral argument counsel for relators interestingly called attention to the wisdom of that plan of the act by which advantage to the state would be greatly increased in having as a member of the legislature, when it considers an act or acts proposed by the commission, one who was a member of the commission, as would happen in the event a member of the commission were a member of such session of the legislature. There is force in the argument that one who had listened to the details of the inquiries of the commission and of the information it had received would be already familiar with the subject and of peculiar and signal help to other legislators in the final shaping of contemplated legislation. But these considerations go only to the propriety, or lack of it, in the constitutional provision in question as it is written. Most any rule has its disadvantages as well as its virtues. To be persuaded by the argument of counsel would induce the writing of an exception to the rule in the constitution. On the contrary, it must be held that, in adopting the

provision referred to, the makers of the constitution preferred to forego some advantages that might flow from some exception to the rule, rather than risk manifest evils which would be obviated by enforcement of the rule without any exception or qualification. We are of the opinion that membership in the industrial code commission comes within the term "office" as used in this provision of the constitution, and that the relator is not eligible thereto—this according to both the spirit and the letter of the law.

Other than the one just discussed, there is no objection to the validity of the act. The provision found to be unenforcible because of the ineligibility of a member of the legislature to membership on the commission must be considered as directory and easily separable from the remainder of the law without affecting its validity. Manifestly, one of the dominant ideas of the act concerning the membership of the commission is that "the governor shall appoint a commission, consisting of five citizens of the state of Washington," and if, by reason of a deep interest in the important subject-matter, the legislature suggests a rank or class denied by the constitution from which a member of the commission should be chosen by the appointive power, such situation will in no sense deprive the governor of the right and power to appoint some other citizen of the state, eligible to be a member of the commission, instead of the one determined to be ineligible.

It results from the foregoing that the writ applied for in cause No. 15417 should be, and it is, denied; also that the writ applied for in cause No. 15418 should be, and it is, granted.

HOLCOMB, C. J., MAIN, MACKINTOSH, and TOLMAN, JJ., concur.