[No. 30371.    *En Banc.*    October 15, 1947.]

THE STATE OF WASHINGTON, *on the Relation of Herbert M. Hamblen, Plaintiff*, v. CLIFF YELLE, *as State Auditor, Respondent.*[1]

*Ford Q. Elvidge, Special Assistant to the Attorney General*, for relator.

*The Attorney General* and *Smithmoore P. Myers, Assistant*, for respondent.

MILLARD, J.—This is an original application for a writ of mandamus to compel the state auditor to issue a warrant to pay the expenses of the relator incurred under a statute (Laws of 1947, chapter 36, p. 60) of the 1947 legislature creating what is denominated in that statute as a "State Legislative Council." Respondent demurs to and moves denial of the application upon the ground that, as relator is a member of the legislature which enacted the statute cited, he is disqualified from serving upon the legislative council, as such membership constitutes a civil office which the state

[1]Reported in 185 P. (2d) 723.

constitution, Art. II, § 13, reading as follows, forbids the relator from holding:

"No member of the legislature during the term for which he is elected shall be appointed or elected to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

Chapter 36, Laws of 1947, reads as follows:

"SECTION 1. There is hereby created a 'State Legislative Council' hereinafter referred to as the council, which shall consist of ten senators and eleven representatives from the Legislature of the State of Washington, including the President pro tem of the Senate and the Speaker of the House of Representatives, said council to be appointed by the President of the Senate and the Speaker of the House of Representatives at least ten days before the close of the 1947 session of the Legislature, and at least ten days before the close of each regular session thereafter. The President of the Senate and the Speaker of the House of Representatives shall prepare their lists of appointees so that the whole membership of the council shall include at least one individual from each United States Congressional District within the state and so that not more than twelve of the council members shall be members of any one political party. The said lists of appointees shall be subject to confirmation as to the senate members by the Senate and as to the house members by the House of Representatives. In the event of a failure to appoint council members within the time above stated, or in the event of a refusal by either Senate or House of Representatives to confirm appointments on the council, then the members on the council from either house in which there is a failure to appoint or confirm shall be elected forthwith by the members of such house.

"SEC. 2. The council shall have the following powers and duties: (1) To perform, either through the council as a whole or through subcommittees thereof, all duties and functions customarily delegated to special interim legislative committees;

"(2) To examine and study the administrative organization and procedures of the state government, its offices, boards, committees, commissions, institutions and other state agencies and to make recommendations, where found advisable, directed to the elimination of unnecessary overlapping or duplication of functions, procedures and expendi-

tures, and to the promotion of economy and efficiency in state government;

"(3) To make current examination and reports concerning the current condition of all state funds, appropriations and other state moneys; concerning whether or not such appropriations are being currently expended for the purposes and within the statutory restrictions provided by the Legislature; and concerning the current availability of revenue to meet expenditures under appropriations;

"(4) To make such other studies and examinations of the state government and its state agencies as it may find advisable and to hear complaints, hold hearings, gather information and make findings of fact with respect thereto;

"(5) To receive messages and reports in person or in writing from the Governor or any other state officials and to attend generally to any and all business addressed to or affecting the Legislature during the interim between regular legislative sessions; and

"(6) To make reports from time to time to the members of the Legislature and to the public with respect to any of its findings or recommendations. The council shall keep complete minutes of its meetings. The council shall make and distribute its final report to the members of the ensuing Legislature at least ten days prior to the convening of the Legislature.

"(7) To cooperate, act and function with similar councils or committees of other states, with the Council of State Governments, and with other interstate research organizations.

"Sec. 3. In the discharge of any duty herein imposed, the council and its subcommittees shall have the authority to examine and inspect all files, records and accounts of any state office, department, institution, board, commission or agency, and to administer oaths, issue subpoenas, compel the attendance of witnesses and the production of any papers, books, accounts, documents and testimony, and to cause the deposition of witnesses, either residing within or without the state, to be taken in the manner prescribed by law for taking depositions in civil actions in the superior courts. In case of disobedience on the part of any person to comply with any subpoena issued in behalf of the council, or on the refusal of any witness to testify to any matters regarding which he may be lawfully interrogated, it shall be the duty of the superior court of any county, or of the judge thereof, on application of the council, to compel obedience by pro-

ceedings for contempt, as in the case of disobedience of the requirements of a subpoena issued from such court or a refusal to testify therein. Each witness who appears before the State Legislative Council by its order, other than a state official or employee, shall receive for his attendance the fees and mileage provided for witnesses in civil cases in courts of record, which shall be audited and paid upon the presentation of proper vouchers signed by such witness and approved by the secretary and chairman of the council.

"SEC. 4. The first meeting of the State Legislative Council shall be held on the third Monday in June, 1947, and thereafter meetings shall be held throughout the legislative interim at such times and at such places as the council may determine. Subcommittees of the council may meet at such additional times and in such places as may be convenient or necessary in carrying out their delegated duties.

"SEC. 5. The council shall have authority to select and employ an executive secretary, together with such other clerical, legal, accounting, research, and other assistants as it may deem desirable, whose compensation and salaries shall be fixed by the council.

"SEC. 6. The members of the council shall be reimbursed for their expenses incurred while attending sessions of the State Legislative Council or meetings of any subcommittees of the council or while engaged on other council business authorized by the council to the extent of fifteen dollars ($15) per day plus five cents (5¢) per mile in going and coming from State Legislative Council sessions or subcommittee meetings or for travel on other council business authorized by the council. All expenses incurred by the council, including salaries of employees, shall be paid upon voucher forms as provided by the State Auditor and signed by the chairman or vice-chairman of the council and attested by the secretary of said council, and the authority of said chairman and secretary to sign vouchers shall continue until their successors are selected in each ensuing session of the Legislature. Vouchers may be drawn upon funds appropriated generally by the Legislature for legislative expenses or upon any special appropriation which may be provided by the Legislature for the expenses of the council.

"SEC. 7. The State Legislative Council shall have authority to make its own rules and regulations governing the conduct of its business not otherwise prescribed in this act. The term of office of all council members shall be from time of confirmation or election until the convening of the next

session of the Legislature. Vacancies on the council among the senate members of the council may be filled by appointment by the remaining senate members. Vacancies on the council from among the members of the House of Representatives may be filled by appointment by the remaining house members. All such vacancies shall be filled from the same political party as that of the member whose seat was vacated. All of the minutes, records and files of the council and its subcommittees shall be delivered over by the council to the Speaker of the House of Representatives or to the President of the Senate at the convening of each new session of the Legislature, which minutes, records and files shall be held subject to the order of the Senate and House of Representatives, and shall thereafter be delivered over to the members of the succeeding legislative council as soon as the newly constituted council has been appointed and organized in each ensuing session of the Legislature.

"SEC. 8. If any section, subsection, paragraph or provision of this act shall be held invalid by any court for any reason, such invalidity shall not in any way affect the validity of the remainder of this act."

In 1933 (No. 206, p. 321, Mich. Laws of 1933), the legislature of the state of Michigan created by statute a legislative council which was directed to work during the interim between legislative sessions in the gathering of information for the use of the next ensuing legislature. Similar statutes have been enacted by the states of Connecticut, Illinois, Kansas, Kentucky, Maine, Maryland, Missouri, Nebraska, North Dakota, Oklahoma, Pennsylvania, Rhode Island, and Virginia. In Virginia, the committee is denominated "Virginia Advisory Legislative Council."

The legislature of some of the states call the committee a legislative research committee, joint state government commission, and committee on legislative research; but the committees were all created for the purpose of obtaining information for the use of the next session of the legislature. By constitutional or statutory provision, all of the states listed above, except Rhode Island, prohibit members of the legislature from filling a civil office created by the legislature during the term for which such legislators are elected.

Counsel for respondent contend that the legislative coun-

cil is a permanent, continuing body given independent existence by the legislature, and that the terms of office of its members are not dependent upon their terms of office as legislators; that, once confirmed or elected, they serve for a specified time, even if they do not continue to be legislators, and that this independent group is empowered by the statute creating it to make forced examinations of the affairs of state offices and to otherwise function in a manner which is alien to the fundamental purpose of the legislature to enact the laws of the state. It is further urged that the investigation authorized is not one to lay the groundwork for possible future legislation and is in no way connected with the fulfillment of the legislative purpose, but is an attempt to control the administration of our laws, clearly manifested by the language of the statute, which contemplates that the council or its agents will, from time to time, examine state funds, appropriations, and other state moneys. It is insisted that subd. (4) of § 2 of the statute, which empowers and makes it the duty of the council to make such other studies and examinations of the state government and its state agencies as it may find advisable, and to hear complaints, hold hearings, gather information, and make findings of fact with respect thereto, removes all limitations and authorizes the council to delve into any phase of an activity or function connected with the state government for any purpose, including those in no way connected with the legislative function. It is argued that the council's powers of inquiry, of investigation, and of report, are not in any way restricted to or co-ordinated with legislative purposes. In other words, the council is not restricted to function as an agency of the legislature. It is further contended that membership on the council constitutes a civil office; and, since relator was a member of the 1947 legislature, which created the council, his membership on that council during his present term of office as a legislator violates Art. II, § 13, of the state constitution quoted above.

Chapter 36, Laws of 1947, provides for the selection of ten senators and eleven representatives by or through the legislature to constitute a "State Legislative Council." The coun-

cil is authorized to perform, either through the council as a whole or subcommittees of the council, the duties and functions customarily delegated to special interim legislative committees, and to make reports from time to time to members of the legislature and to the public with respect to any of its findings or recommendations. The council is further required to make and distribute its final report to the members of the ensuing legislature at least ten days prior to the convening of the legislature. The statute vests in the council the usual and necessary power to inspect public records of the state, to administer oaths, compel the attendance of witnesses, and direct the superior courts to act in aid of the committee in compelling witnesses to respond to process of the council.

The authorities are conflicting on the question whether by concurrent resolution the legislature may lawfully create a committee with power to sit after adjournment. In the jurisdictions which approve the power to create such committees by joint resolution, there is no distinction between joint resolutions and statutes, as both require the signature of the governor. The concurrent resolution cases are not, of course, authority for the validity of a single house resolution. With those questions, we are not concerned.

While a single house is not the legislature, and while, according to well-reasoned cases, the legislature cannot by joint resolution create a committee with power to sit after adjournment, we find no authority sustaining the position that interim committees to investigate and report to the next legislature may not be appointed pursuant to a statute duly adopted, and that service of a legislator on such a committee would be in violation of a constitutional or statutory provision which prohibits members of the legislature from occupying any other office, trust, or employment. See *Special Assembly Interim Committee v. Southard*, 13 Cal. (2d) 497, 90 P. (2d) 304.

The authorities are in accord that, by statute, a legislative committee may be created and authorized to sit during the interim between sessions for any proper purpose, and empowered to take testimony, compel the attendance of wit-

nesses, punish for contempt, and be directed to report its findings to the next legislature.

"No one would doubt the validity of a statute to the effect that whenever a legislative committee has been appointed in one year, its members, if re-elected, shall continue to constitute the committee during the next year, unless and until their membership is otherwise revoked. What the Legislature may say in a statute applicable to legislative committees generally, it may say with the same validity in defining the life and the functions of a particular committee. Far from departing thereby from the principles and precedents of parliamentary procedure, it is following the very method to which consecrating usage has affixed the stamp of regularity." *People ex rel. Hastings v. Hofstadter,* 258 N. Y. 425, 433, 180 N. E. 106, 79 A. L. R. 1208.

See, also, 49 Am. Jur. 258, 259.

"Whenever the legislature has authority to enact laws, it has corresponding authority to make necessary investigations for the ascertainment of such facts as are a necessary predicate for the enactment of the law, and to this end may appoint investigating committees. This is the principal purpose and function of legislative committees. A legislative committee may be created to investigate the management of various state institutions and departments of the state in order to ascertain facts as a basis for possible remedial legislation, or to investigate the workings of a primary election law for the selection of party candidates for United States Senator, with a view to further legislation. The powers of such committees need not, however, be restricted to investigations upon matters pertinent only to legislation; legislative committees may be created to investigate into any subject legitimately within the scope of the powers, functions, and duties of the legislature, and to secure information necessary to the proper discharge thereof." 49 Am. Jur. 260.

Other than *State ex rel. French v. Clausen,* 107 Wash. 667, 182 Pac. 610, which is distinguishable from the case at bar, we find no authority that members of the legislature which by statute created a legislative council or interim committee, could not serve upon such council or committee. In other words, membership on the council does not constitute a civil office created by the legislature.

In *State ex rel. McIntosh v. Hutchinson,* 187 Wash. 61, 59 P. (2d) 1117, 105 A. L. R. 1234, we quoted with approval

from *State ex rel. Barney v. Hawkins,* 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583, as follows:

"After an exhaustive examination of the authorities, we hold that five elements are indispensable in any position of public employment, in order to make it a public office of a civil nature: (1) It must be created by the Constitution or by the legislature or created by a municipality or other body through authority conferred by the legislature; (2) it must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public; (3) the powers conferred and the duties to be discharged must be defined, directly or impliedly, by the legislature or through legislative authority; (4) the duties must be performed independently and without control of a superior power, other than the law, unless they be those of an inferior or subordinate office, created or authorized by the legislature and by it placed under the general control of a superior officer or body; (5) it must have some permanency and continuity and not be only temporary or occasional."

If any of the five elements recited in *State ex rel. Barney v. Hawkins, supra,* as indispensable in any position of public employment is absent, such employment is not a public office of a civil nature. All five elements must be present. In the case at bar, the first element is present, but the second element is lacking. It is not necessary to discuss the question whether the other three elements are present. Unless there was delegated to the members of the legislative council some of the sovereign functions of government to be exercised for the benefit of the public, the position now held by each of the members of the legislative council is not a civil office. Mechem on Public Officers, § 4, p. 5. The council members will not legislate, execute, or administer laws enacted by them. The only power of the legislative council is to collect information and report as to the facts it finds to the next legislature and to make its reports public. Since it is not engaged in making laws, executing them, or administering them, no member of the council is a holder of a civil office. See *State ex rel. Brown v. Blew,* 20 Wn. (2d) 47, 145 P. (2d) 554, and 46 C. J. 925.

By chapter 184, p. 566, Laws of 1919, the legislature provided for appointment by the governor of a commission of

five citizens, one of whom was to be a member of the state Senate and one a member of the House of Representatives, to be known as the "Industrial Code Commission." The duty of the commission was defined to be that of investigation of the evils existing in industrial life and to prepare and present to the legislature at its next regular session proposed legislation upon all such subjects, including an act for the prevention of strikes and the orderly settlement of industrial disputes. We held in *State ex rel. French v. Clausen,* 107 Wash. 667, 182 Pac. 610, that the provision in the industrial code commission statute that two of the five members of the commission must be members of the legislature, was invalid as violative of Art. II, § 13, of the state constitution, which prohibits the appointment or election of any member of the legislature, during the time for which he is elected, to any civil office created during his term. The case is distinguishable from the case at bar. The commission was in no sense an interim committee, as is the legislative council in the case at bar. It was independent of the legislature, and the personnel of that commission was appointed by the governor.

The statute (Laws of 1947, chapter 36) which created the legislative council, does no more than make available new machinery and new methods by which the members of the committee may keep themselves informed upon specific problems; and that statute does not impose upon the members of the council who are members of the legislature, any new office or trust. The additional duties which are imposed upon the legislative members of the council are no different in purpose and kind from those which they already perform.

In principle, *Parker v. Riley,* 18 Cal. (2d) 83, 113 P. (2d) 873, 134 A. L. R. 1405, sustains the position of relator in the case at bar. The California legislature created a commission on interstate co-operation and charged it with the duty of furthering the participation of the state in the council of state governments proposed by the state of California and other governments, of organizing and maintaining machinery for those purposes, of establishing committees and advisory boards and employing such persons as were necessary to carry out those duties; of reporting its proposals to the

legislature within fifteen days after the convening of each regular legislative session and at such other times as it considered appropriate. The statute created a senate committee and an assembly committee on interstate co-operation, which were to be chosen as other committees of each branch of the legislature, and to function during the interim between sessions as well as during the regular sessions. The membership of the commission was made up of five members of the senate committee, five members of the assembly committee, and five citizens to be appointed by the governor. The members appointed by the governor were to hold office at his pleasure, and the members of the legislature were to hold office as long as they remained members of the committees of each house. The comptroller of the state of California refused to honor vouchers for expenses of members of the commission, and an original petition for a writ of mandate to compel the issuance of the warrants was filed in the supreme court of California, which granted the writ. The court said:

"In so far as the statute deals with the creation of *interim* committees in each of the houses of the legislature, no successful attack can be made upon it. Indeed, the legislative committees created under this statute appear to satisfy fully the requirements enunciated in the opinions of this court in *Special Assembly Interim Committee v. Southard*, 13 Cal. (2d) 497 [90 Pac. (2d) 304], and *Swing v. Riley*, 13 Cal. (2d) 513 [90 Pac. (2d) 313].

"The most serious challenge to the constitutionality of this legislation is advanced under section 19 of article IV of the California Constitution. That section since 1916 has provided: 'No senator or member of assembly shall, during the term for which he shall have been elected, hold or accept any office, trust or employment under this state; provided, that this provision shall not apply to any office filled by election by the people.' Respondent contends that membership upon the California Commission on Interstate Cooperation constitutes an 'office, trust, or employment' under the constitutional provision, and that members of the legislature cannot lawfully be made members of such a commission. Prior to 1916 the comparable provision was far less stringent and only prohibited the acceptance by a legislator of 'any civil office of profit' which was created or the emoluments of

which had been increased during his term of office as a legislator. Constitutional provisions in many other states have retained the less stringent form prohibiting a 'civil appointment' (Illinois Const., art. IV, sec. 15; New York Const., art. III, sec. 7) or a 'civil office' (Colorado Const., art. V, sec. 8; Montana Const., art. 5, sec. 7; Nevada Const., art. 4, sec. 8). Such constitutional provisions have been interpreted to permit the acceptance by a legislator during his term of office of positions which do not amount to an 'office' but are mere 'employment'. (*Hudson v. Annear*, 101 Colo. 551 [75 Pac. (2d) 587]; *State Tax Com. v. Harrington*, 126 Md. 157 [94 Atl. 537]; *State ex rel. Barney v. Hawkins*, 79 Mont. 506 [257 Pac. 411, 53 A. L. R. 583]; *State ex rel. Kendall v. Cole*, 38 Nev. 215 [148 Pac. 551].) A similar conclusion was reached in California under the older constitutional provision. (*Curtin v. State*, 61 Cal. App. 377, 390 [214 Pac. 1030].) After the amendment of this provision in 1916, however, it was held that such positions as that of a deputy district attorney or that of auditor of the State Board of Prison Directors constitute the kind of 'office, trust, or employment' to which a legislator may not be appointed. (*Satterwhite v. Garrison*, 34 Cal. App. 734 [168 Pac. 1053]; *Chenoweth v. Chambers*, 33 Cal. App. 104 [164 Pac. 428].) The amended provision has been said to be far more sweeping than its predecessor and to have been designed to prevent the acquiring by members of the legislature of positions on the state payroll which might prevent their maintaining a desirable independence of mind. (*Chenoweth v. Chambers, supra*, p. 106.) It has been indicated, however, that compensation or emolument may not be a necessary element where the position involved falls within the more important classification of an 'office'. (See *Patton v. Board of Health*, 127 Cal. 388, 395 [59 Pac. 702, 78 Am. St. Rep. 66].) [2] It is clear, therefore, that the purpose of the constitutional provision here involved is to prevent the acceptance by a legislator of any position under the state, whether an office or merely employment, which creates the opportunity for private aggrandizement, pecuniary in nature or otherwise. (See *State ex rel. Barney v. Hawkins*, 79 Mont. 506, 526 [257 Pac. 411, 53 A. L. R. 583]; *Gillespie v. Barrett*, 368 Ill. 612, 617 [15 N. E. (2d) 513].)

"The sweeping terms of the California constitutional provision thus prevent the appointment of a member of the legislature to any other position of trust or responsibility under the state. It may be noted, however, that the positions

created by the statute here attacked lack certain elements usually associated with an 'office' or 'trust'. Thus, it is generally said that an office or trust requires the vesting in an individual of a portion of the sovereign powers of the state. (*Patton v. Board of Health, supra,* pp. 394, 398; *Curtin v. State, supra,* p. 390; *Leymel v. Johnson,* 105 Cal. App. 694, 699 [288 Pac. 858]; *Couts v. County of San Diego,* 139 Cal. App. 706, 712 [34 Pac. (2d) 812]; *State ex rel. Barney v. Hawkins, supra,* p. 520; *State ex rel. Kendall v. Cole, supra;* 53 A. L. R. 595, 602.) The positions here created do not measure up to so high a standard. They involve merely the interchange of information, the assembling of data, and the formulation of proposals to be placed before the legislature. Such tasks do not require the exercise of a part of the sovereign power of the state. It may also be doubted whether the positions here conferred constitute an 'employment' by the state since no compensation is provided for the members of the commission. Yet, while distinctions might thus be drawn to show that membership on the commission is not within the scope of the constitutional prohibition, we prefer to place our decision on other more fundamental grounds.

"[3] Assuming, but not deciding, that the positions created under this statute amount to an 'office, trust, or employment' under the state, we do not think the trust thus imposed upon selected members of the legislature is in violation of the constitutional prohibition. The constitutional provision clearly implies that the prohibition is directed at the conferring of any *other* office, trust, or employment upon a member of the legislature. A member of the legislature is already an officer holding a position of trust under the state government. Where a statute merely makes available new machinery and new methods by which particular legislators may keep themselves informed upon specific problems, it cannot be said to have imposed upon them any new office or trust. The additional duties which rest upon the legislative members of the commission are identical in purpose and kind with those which they already perform. As was said in *People v. Tremaine,* 252 N. Y. 27, 41 [168 N. E. 817], 'The duties of members of the Legislature may be enlarged without making a civil appointment or creating a new office, so long as the duties are such as may be properly attached to the legislative office. . . . ' We hold, therefore, that the statute here attacked did not contemplate the conferring of any new office, trust, or employment upon the legislative members of this commission. (*Special Assembly Interim*

*Com. v. Southard, supra,* p. 499; *Mulnix v. Elliott,* 62 Colo. 46 [156 Pac. 216]; *Terrell v. King,* 118 Tex. 237, 248 [14 S. W. (2d) 786].)

"[1b] It must not be assumed, however, that legislative activities may be expanded indefinitely through the creation of separate agencies responsible primarily to the legislature. This sort of expansion would soon lead to a legislative usurpation of power incompatible with the proper exercise of its lawmaking function. The Constitution forbids any such assumption of duties by the legislative branch of government, and a statute conferring a nonlegislative office or trust upon members of the legislature would be clearly unconstitutional. But under the particular facts set forth, where the responsibilities imposed are merely those of gathering information and making recommendations, we think the duties must be considered incidental to the lawmaking function. The creation of a separate commission in this instance involved merely the use of new machinery in carrying out a trust already reposed in the members of the legislature. Under such circumstances the statute does not fall within the prohibition of the constitutional provision relied upon, and the contentions of respondent in this regard cannot be sustained."

*Brown v. Brancato,* 321 Pa. 54, 184 Atl. 89, and *In re Hague,* 105 N. J. Eq. 134, 147 Atl. 220, are not in point. They hold that the legislature may not by resolution create a committee with power to sit after adjournment. As stated above, we find no authority contrary to the rule that interim committees to investigate and report to the next legislature may be appointed pursuant to a statute duly adopted, and that the service of a legislator on such a committee would not be violative of § 13 of Art. II of the state constitution, prohibiting members of the legislature from occupying a civil office which was created or the emoluments of which were increased during the term for which such member of the legislature was elected. See *Special Assembly Interim Committee v. Southard,* 13 Cal. (2d) 497, 90 P. (2d) 304.

No other questions of substantial merit are raised.

Let the writ issue.

BEALS, STEINERT, ROBINSON, and SIMPSON, JJ., concur.

JEFFERS, J., concurs in the result.

SCHWELLENBACH, J. (dissenting)—It is rather difficult, from a reading of the majority opinion, to determine whether the majority considers the "State Legislative Council" a council or a legislative committee. The act itself is very clear; it sets up a council. True, its membership is limited to senators and representatives, but this fact does not allow the members to perform legislative functions. It is either an interim legislative committee, or it is a council.

The majority points out that a number of states have similar legislative councils, and that, by constitutional or statutory provisions, all of the states, except Rhode Island, prohibit members of the legislature from filling civil offices created by the legislature during the term for which such legislators are elected. Search reveals that in none of these states has the constitutional question been ruled upon.

If we are to consider this as a legislative interim committee, we are confronted with the power of the legislature to appoint a committee to function after the adjournment of the legislative session.

Art. II, § 1, of the state constitution provides:

"The legislative powers shall be vested in a senate and house of representatives, which shall be called the legislature of the state of Washington."

Art. II, § 12, provides:

"The first legislature shall meet on the first Wednesday after the first Monday in November, A. D. 1889. The second legislature shall meet on the first Wednesday after the first Monday in January, A. D. 1891, and sessions of the legislature shall be held biennially thereafter, unless specially convened by the governor, but the times of meeting of subsequent sessions may be changed by the legislature. After the first legislature the sessions shall not be more than sixty days."

The legislative branch of the state government is thus limited to 60 day sessions. When the legislature adjourns *sine die,* its functions as the legislative branch of the government, entirely cease. Its members lose all powers as legislators. They cannot make laws; they cannot reconvene, unless called into special session by the governor; they cannot

perpetuate themselves in power; they cannot appoint committees to serve subsequent to adjournment. This is due entirely to the constitutional provision limiting the session to 60 days. If that limitation were not there, then the legislature could function at all times. Such is the situation in New York, which gave rise to the decision in *People ex rel. Hastings v. Hofstadter*, 258 N. Y. 425, 180 N. E. 106, 79 A. L. R. 1208, relied upon by the majority. I have only been able to find two cases in which the power of the legislature to appoint interim committees was questioned because of constitutional limitations similar to ours.

*Brown v. Brancato*, 321 Pa. 54, 184 Atl. 89, was an action to restrain a committee, appointed by the Pennsylvania House of Representatives, from investigating a board of city trusts. The general assembly adjourned *sine die* June 21, 1935, and demand was made by the committee on September 5, 1935, for access to records, books, and accounts of the trusts. The court held:

"Legislative power is vested in the General Assembly composed of the Senate and the House of Representatives: Article II, section 1, PS, Constitution, page 176. Members of the Senate are elected for four years, members of the House for two years: Article II, section 3. The Assembly shall meet in regular session on the first Tuesday of January every second year and at other times when convened by the Governor, but no adjourned annual session shall be held: Article II, section 3. No power is vested in the House to act independently of the Senate after the Assembly adjourns sine die. The Constitution contemplates the exercise of Legislative power by concurrence of both House and Senate. The legislative action of the General Assembly, in virtue of the session which convened, as required by article II, section 3, ended with its adjournment. After adjournment the power of this committee of the House, if it had any power before, was effectually ended. There is no implied power in the exercise of which the House may sit after adjournment of the Assembly and therefore no power in the House to create a committee to do what the House itself may not do. From and after the adjournment, the power of the House complained of in this suit, was done once and for all."

The precise issue in that case was the power of one House to act subsequent to the adjournment of the assembly, but

the principle that the legislature had no power to function after the adjournment was clearly stated.

In *In re Hague,* 105 N. J. Eq. 134, 147 Atl. 220, the court was called upon to determine the validity, subsequent to adjournment, of a legislative committee appointed for the laudable purpose of investigating Mayor Hague. The court held:

"The legislative power vests in a senate and general assembly. *State Const., art 4 § 1 ¶ 1.* Said bodies meet separately on the second Tuesday in January, at which time of meeting the legislative year commences. *State Const., art. 4 § 1 ¶ 3.* Neither of said bodies are continuous; they expire annually. *State v. Rogers, 56 N. J. Law 480* (at *p. 631*). Although the senate—providing an always-existent membership—may be considered as having a permanent existence, it does not have continuous vitality. *State v. Rogers, supra* (at *p. 622*). It is only when the senate and general assembly are lawfully assembled that they constitute the legislature—the law-making body of the state. Each of said bodies are subject, in their action, to constitutional limitations and laws, in common with all other bodies, officers and tribunals within the state. *In re Gunn, 50 Kan. 155; 19 L. R. A. 519; Kilbourn v. Thompson, 103 U. S. 168; Burnham v. Morrissey, 80 Mass. 226.* All powers of the legislature, as such, cease upon the final adjournment of said body. All powers delegated to a committee appointed by a joint resolution of the senate and general assembly also cease."

The majority recognizes that interim committees are not lawful. It states:

". . . and while, according to well-reasoned cases, the legislature cannot by joint resolution create a committee with power to sit after adjournment, we find no authority sustaining the position that interim committees to investigate and report to the next legislature may not be appointed pursuant to a statute duly adopted."

Surely the legislature would not attempt, and surely this court would not countenance, the constitutional prohibition against interim committees to be circumvented by the subterfuge of substituting such a committee by an act of the legislature, rather than by a joint resolution. Art. II, § 12, of the state constitution prohibits the legislature from continuing as such for more than 60 days. After adjourn-

ment, it cannot continue through an interim legislative committee, whether that committee be authorized by joint resolution or by a statute.

This is not a legislative committee. *It is a council,* a separate body, set up by an act of the legislature. The legislature had the right to set up such a council. It had the right to prescribe of whom the membership of the council should consist. In this instance, it limits the membership to members of the legislature. But, just the minute those individuals qualify, they do not serve as legislators; *they serve as commissioners.* The only constitutional prohibition against members of the legislature serving in any other capacity is that they cannot be appointed or elected to a civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which such legislators were elected.

So, the question for us to determine is not whether the legislature may create an interim committee, by statute, to act after the legislature adjourns *sine die,* but is this—is membership on this legislative council a civil office.

The majority relies upon *Parker v. Riley,* 18 Cal. (2d) 83, 113 P. (2d) 873, 134 A. L. R. 1405, as authority for its contention. This case was urged upon us by the attorney general in *State ex rel. Troy v. Yelle,* 27 Wn. (2d) 99, 176 P. (2d) 459, involving the constitutionality of the Washington committee on interstate co-operation. We pointed out that our own decisions held otherwise and refused to follow the decisions of other states. We should follow the same procedure in this case, as I shall point out later. As the majority states, in *State ex rel. McIntosh v. Hutchinson,* 187 Wash. 61, 59 P. (2d) 1117, 105 A. L. R. 1234, we quoted with approval from *State ex rel. Barney v. Hawkins,* 79 Mont. 506, 257 Pac. 411, 53 A. L. R. 583, the five elements necessary to make a position of public employment a public office of a civil nature. The majority feels that the act under consideration does not come within provision (2) of the rule: "It must possess a delegation of a portion of the sovereign power of government, to be exercised for the benefit of the public."

The council has authority, among other things:

To examine and study the administrative organization and procedure of the state government, and to make recommendations directed to elimination of unnecessary overlapping of functions, and to the promotion of economy and efficiency in state government.

To make current examinations and reports concerning current conditions of all state funds, appropriations, and other state moneys.

To make such other studies and examinations of the state government and its state agencies *as it may find advisable,* and to hear complaints, hold hearings, and make findings of fact.

To co-operate and function with similar councils and committees of other states.

It has authority to employ an executive secretary, together with other clerical, legal, accounting, research, and other assistants, as may be advisable, and to fix their salaries and compensation.

It has authority to make its own rules and regulations.

Vacancies on the council among Senate members may be filled by appointment by the remaining Senate members. A similar provision is made for filling vacancies among House members by remaining House members of the council.

These are not the functions of employees. They are the functions of officers. All of the foregoing constitutes delegation of a portion of the sovereign power of government to be exercised for the benefit of the public.

*Tucker v. State,* 218 Ind. 614, 35 N. E. (2d) 270, was a case considering the constitutionality of an act of the legislature setting up various boards to perform the functions of elective officers. Among other things, the act abolished the office of attorney general. Another act established the office, the first incumbent to be chosen at an election to be held a year hence, and provided that in the interim, the governor, lieutenant governor, and secretary of state should constitute a board to employ an attorney to be known as "the attorney general of Indiana." In discussing whether or not this individual was an officer, the court said:

"The interim Attorney General is referred to in the act as an employee, but the duties and functions delegated to him by the act involve an exercise of a portion of the sovereign power. He appoints deputies, and employees are not thought to have deputies; fixes their salaries; and is authorized to draw vouchers upon the State Treasury in his own discretion, limited only by the total appropriation theretofore made for the Attorney General's office and the Department of Law. This is discretion to spend the total funds, uncontrolled by the judgment of any other executive officer. The provision that his expenditures are limited by the amounts appropriated applies to all—even the highest and most powerful offices. The exercise of discretion in employing deputies and persons to assist in taking care of the state's business, and to fix their salaries, and to incur expenses to be paid out of the general funds, is an exercise of part of the functions of a sovereign. It is well settled that any one intrusted with part of the sovereign power is an officer."

In *State ex rel. Nagle v. Kelsey,* 102 Mont. 8, 55 P. (2d) 685, the defendant was a member of the Montana legislature, which had created the Montana relief commission, and had been appointed by the governor as one of its members. Art. V, § 7, of the Montana constitution provided: "No senator or representative shall, during the term for which he shall have been elected, be appointed to any civil office under the state."

The act provided for the establishment of a state fund; for a commission to administer the same, with power of supervision and distribution; for co-operation with the Federal government; for the appointment of administrators; for adoption of rules and regulations governing the board and the transaction of its business; for the right to secure property and take title thereto; for the right to make contracts; and for a multitude of other rights specifically enumerated in the act.

In discussing whether or not membership on this commission constituted a "civil office," after quoting the five requirements as laid down in *State ex rel. Barney v. Hawkins, supra,* the court said:

"A careful review of the powers and authority of officials and boards existing in the state of Montana at this time

fails to disclose any board or official vested with more sweeping and comprehensive powers than those conferred upon the Montana Relief Commission. So we say that unquestionably the individuals who constitute the membership of the commission are civil officers, not mere state employees or even minor civil officers, but public officials, invested with large powers and comprehensive discretion. A member of the commission is a civil officer of the state of Montana, and as such is subject to all of the provisions of the Constitution and laws of the state of Montana applicable thereto."

However, it is not necessary for us to look to other states for guidance in the determination of this question. The precise question has been presented to and decided by this court in *State ex rel. French v. Clausen,* 107 Wash. 667, 182 Pac. 610, in which Laws of 1919, chapter 184, p. 566, adopting the Industrial Code Commission, was ruled upon. Chapter 184 provided:

"SECTION 1. As soon as practicable after the passage of this act the governor shall appoint a commission, consisting of five citizens of the state of Washington, one of whom shall be a member of the state senate and one a member of the house of representatives of the legislature of 1919, to be known as the 'Industrial Code Commission'. Each commissioner shall receive a compensation of ten dollars ($10.00) for each day actually employed in the work of such commission, and shall be allowed his necessary expenses incurred in the actual performance of his duties. The commission shall organize as soon as practicable after their appointment and select one of their number as chairman and one as secretary, and may employ such persons as they deem necessary to assist them in the performance of their duties under this act.

"SEC. 2. It shall be the duty of the industrial code commission to investigate the evils existing in industrial life and the means and methods of remedying the same, and to prepare and present to the legislature of the state of Washington at its next regular session a proposed act, or acts, upon all such subjects, including an act for the prevention of strikes, lockouts and boycotts, and the orderly settlement of industrial disputes.

"SEC. 3. Each commissioner shall have power to administer oaths and to issue subpoenas for the attendance of witnesses and the production of books and papers in any inquiry, investigation or hearing in any part of the state.

"The superior court of the county in which any such inquiry, investigation or hearing may be had shall have power to compel the attendance of witnesses and the production of books and papers and testimony as required by such subpoena. Such superior court shall have power to punish in cases of failure to appear in testimony as in cases of contempt. Witnesses shall be entitled to such fees and mileage as is provided in the case of witnesses in the superior court.

"Sec. 4. For the purpose of carrying out the provisions of this act there is hereby appropriated out of the general fund the sum of twenty-five thousand dollars ($25,000.00)."

The only distinction that I can find in the two acts is that the 1947 act is more elaborate, and the powers and duties of its members are set out in more detail.

In *State ex rel. French v. Clausen, supra,* E. L. French, a member of the legislature of 1919, which created the Industrial Code Commission, was appointed as one of its members. He necessarily expended, in attending one of its meetings, the sum of $6.54, which the state auditor refused to pay, contending that Mr. French's appointment was in conflict with Art. II, § 13, of the state constitution. In holding that he could not serve as a member of the commission, we said:

"Statutes are enacted by legislators of experience, or at least by persons of affairs, while in the enactment of a constitution the public are the legislators. Unless otherwise provided, precision may be exacted in determining the meaning of the language of a statute, while generally, in the case of a constitution, its provisions should be construed in the common and natural view; always the most important thing being to determine, if possible, what the real intention of the lawmakers was. Discussing the subject, this court, by Judge Dunbar, in the case of *State ex rel. Chamberlin v. Daniel,* 17 Wash. 111, 49 Pac. 243, quoted with approval as follows:

"'"A constitution," says Mr. Endlich in his Interpretations of Statutes, § 526, "is intended for the benefit of the people and must receive a liberal construction." "The principle of strict construction would frustrate important provisions in every newly constructed frame of government." Such is the general rule, the keynote, as it were, of all interpretation of constitutional provisions, and is in harmony with the principles already discussed.'

"Section 13, art. 2, of the constitution does not prohibit a member of the legislature, during the term for which he was elected, from being appointed or elected to office, generally, in the state. The preclusion extends only to any office which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected. Of course, the purpose of the rule is obvious. It is as was stated in *Fyfe v. Kent County Clerk*, 149 Mich. 349, 112 N. W. 725, in construing a similar constitutional provision, as follows:

" 'The purpose of these provisions is "to preserve a pure public policy," or, as we said in *Ellis v. Lennon*, 86 Mich. 468, speaking through Justice McGrath, "to prevent officers from using their official position in the creation of offices for themselves or for the appointment of themselves to place." '

"The commission is created by, and its members derive their powers from, an act of the legislature. The term of service is fixed. It uses the process of the state to compel the attendance of witnesses and the production of books and papers. Its members administer oaths. It has at its disposal twenty-five thousand dollars ($25,000) of the state's money for carrying out the purposes of the act. On behalf of the state, of its own independent motion and will, it makes investigations and holds hearings within the state when, where and for whatever length of time it pleases. Its defined duties are under the direction and control of no superior. And each member, in addition to his expenses, receives compensation for each day's actual service.

"In oral argument counsel for relators interestingly called attention to the wisdom of that plan of the act by which advantage to the state would be greatly increased in having as a member of the legislature, when it considers an act or acts proposed by the commission, one who was a member of the commission, as would happen in the event a member of the commission were a member of such session of the legislature. There is force in the argument that one who had listened to the details of the inquiries of the commission and of the information it had received would be already familiar with the subject and of peculiar and signal help to other legislators in the final shaping of contemplated legislation. But these considerations go only to the propriety, or lack of it, in the constitutional provision in question as it is written. Most any rule has its disadvantages as well as its virtues. To be persuaded by the argument of counsel would induce the writing of an exception to the rule in the constitution. On

the contrary, it must be held that, in adopting the provision referred to, the makers of the constitution preferred to forego some advantages that might flow from some exception to the rule, rather than risk manifest evils which would be obviated by enforcement of the rule without any exception or qualification. We are of the opinion that membership in the industrial code commission comes within the term 'office' as used in this provision of the constitution, and that the relator is not eligible thereto—this according to both the spirit and the letter of the law."

There may be instances where it would be proper for us to require a strict interpretation in deciding whether or not a certain position is an office, but we should not do so when we are considering the constitutionality of an act.

In *Benefiel v. Eagle Brass Foundry*, 154 Wash. 330, 282 Pac. 213, we held:

"In maintaining a fire department, a city is exercising a governmental function, and a fireman, instead of being considered as an ordinary employee of the city, 'is in fact a public officer and engaged in a governmental duty'. *Johnson v. Pease*, 126 Wash. 163, 217 Pac. 1005."

Accord, *State ex rel. Knez v. Seattle*, 176 Wash. 283, 28 P. (2d) 1020, 33 P. (2d) 905; *Christie v. Port of Olympia*, 27 Wn. (2d) 534, 179 P. (2d) 294.

In *State v. Nick*, 66 Wash. 134, 119 Pac. 15, we held that police officers exercise the functions and powers of public officers. Accord: *State v. Worsham*, 154 Wash. 575, 283 Pac. 167; *State v. Cooney*, 23 Wn. (2d) 539, 161 P. (2d) 442.

When the people set up the state government, they wrote their own constitution, a basic law to always guide all public officers in the performance of their functions. And they placed upon the courts the solemn obligation of keeping that constitution inviolate. The constitution was written to be obeyed, not evaded or by-passed. It is plain and simple in its terms. It is not within our province to split hairs and make fine distinctions as to the meaning of words. It is our duty to protect the people, in carrying out the purposes for which the constitution was written. In order to maintain a pure public policy, the people have said that no member of the legislature, during the term for which he is elected, shall

be appointed or elected to any civil office in the state. Membership on this commission constitutes such an office.

All the members of this commission were members of the legislature which created the commission. The act provides that the commission shall have permanent existence, and will continue unless repealed by a subsequent legislature.

Because of the constitutional prohibition, all of the present members are disqualified from serving, and the commission must of necessity lie dormant until the convening of the 1949 legislature.

The writ should be denied.

MALLERY, C. J., concurs with SCHWELLENBACH, J.

HILL, J. (concurring in part, dissenting in part)—I concur in the result. I agree with the dissent that the state legislative council created by chapter 36, Laws of 1947, is either an interim legislative committee or a council. I also agree with the dissent that, under our constitutional provision limiting the legislature to a sixty-day session, there can be no valid interim committee.

I further agree with the dissent that membership on the state legislative council is a newly created office; however, I do not believe that it is a civil office within the purview of our constitutional provision prohibiting appointment of a member of the legislature

". . . to any civil office in the state which shall have been created, or the emoluments of which shall have been increased, during the term for which he was elected."

The council can do nothing but investigate, report, and recommend. As the majority says, it is not engaged in making laws, executing them, or administering them.

However, I disagree with the majority in its conclusion that membership on the industrial code commission, involved in *State ex rel. French v. Clausen,* 107 Wash. 667, 182 Pac. 610, can be distinguished from membership on the state legislative council. It is my belief that the decision in that case was wrong and should be overruled.