[No. 24875-5-III.  Division Three.  June 14, 2007.]

VALLEY ENVIRONMENTAL LABORATORY, LLC, *Respondent*, v. YAKIMA COUNTY, *Appellant*, BENNETT K. OSBORNE ET AL., *Respondents.*

*Russell D. Hague, Prosecuting Attorney*, and *Martin F. Muench, Deputy*, for appellant.

*Victoria E. O'Kain*, for respondents.

¶1 SWEENEY, C.J. — Yakima County refused to pay Valley Environmental Laboratory, LLC, for lab services because the county employee involved with the referral was related to or had a close relationship with the owners of the lab. The trial judge concluded that the employee was not a "municipal officer" under the provisions of Washington's code of ethics for municipal officers (chapter 42.23 RCW) and ordered the county to pay for the work. We conclude that questions of fact remain, and we reverse and remand for trial.

## FACTS

PARTIES

¶2 Bennett K. Osborne was a natural resource specialist in the surface water management division of the Yakima County Public Works Department. Yakima County hired Mr. Osborne after he responded to a newspaper ad for the position. He reported to the surface water manager, who in turn reported to the appointed assistant director of public works for environmental services. Mr. Osborne's position is the lowest on a four-tiered organizational chart. Mr. Osborne's position was "non-exempt" and "non-supervisory." And he was required to be a member of a union.

¶3 Valley Environmental Laboratory, LLC, is a Washington limited liability company. It was created in June 2003 to continue the business of another laboratory, Alliance Analytical Laboratory. Its members are Robert and Elizabeth Osborne (Bennett Osborne's parents) and Dara Russell (Bennett Osborne's close friend). Dara Russell was a former employee of Alliance Analytical Laboratory. The only financial contributor to Valley Environmental was Elizabeth Osborne.

EVENTS LEADING TO THE SUIT

¶4 Valley Environmental Laboratory billed Yakima County $49,688 for testing water samples from October 30 through December 2, 2003. Yakima County refused to pay. Mr. Osborne sent water samples to laboratories for testing as part of his job. He sent the samples to Valley Environmental. His supervisor approved these referrals. But the nature and extent of Mr. Osborne's authority is disputed. He says, by declaration, that his authority was limited. He says he did not have authority to send samples independently, and he denies sole authority to choose a lab. Mr. Osborne's manager and his direct supervisor say, again by declaration, that Mr. Osborne had control and ultimately reviewed and approved payment for the lab work.

¶5 Yakima County had used Alliance Analytical Laboratory to perform tests. Mr. Osborne continued using Alliance for these tests when he began his employment. But Alliance Analytical Laboratory stopped doing business in the spring of 2003.

¶6 Mr. Osborne signed and submitted a business license application for a company called Valley Environmental Services. He listed himself as president and submitted the articles of incorporation to the state. But Valley Environmental Services was never formed, and it conducted no business. Valley Environmental Services changed its name to Valley Environmental Laboratory, LLC. And it did incorporate. Mr. Osborne was not an officer in this new company, nor did he have an interest in the new company, financial or otherwise.

¶7 Mr. Osborne began to send water samples for testing to Valley Environmental Laboratory. He did not tell his supervisors of his relationship with Valley Environmental Laboratory.

¶8 Mr. Osborne, with his friend Dara Russell, attended an after-hours social function put on by the Chamber of Commerce. The event required him to show involvement

with a Chamber of Commerce business. Ms. Russell handed Mr. Osborne an old "president" business card (showing him as president of Valley Environmental Services). The card was six months old. He used it as his name tag.

¶9 Another Yakima County employee saw Mr. Osborne's card and reported what she thought was a conflict of interest. The county fired Mr. Osborne. It then refused to pay Valley Environmental Laboratory's outstanding invoices. The county claimed that the agreement for the lab work violated Washington's code of ethics for municipal officers (chapter 42.23 RCW).

THE SUIT

¶10 Valley Environmental Laboratory sued for payment. Yakima County refused to pay and counterclaimed for a refund for those services it had already paid for. It claimed Mr. Osborne had a conflict of interest. It also prayed for imposition of a fine and fees. Everyone moved for summary judgment. The court concluded that Mr. Osborne was not a "municipal officer" within the meaning of RCW 42.23.020.

DISCUSSION

"MUNICIPAL OFFICER" UNDER RCW 42.23.020

¶11 Yakima County argues that the statute is clear and includes Mr. Osborne. It relies on the language of the statute—"municipal officer" shall include "all elected and appointed officers of a municipality, together with all deputies and assistants of such an officer, and all persons exercising or undertaking to exercise any of the powers or functions of a municipal officer." RCW 42.23.020(2). Yakima County argues that Mr. Osborne was an appointed assistant of the public works director. And, given his job description and responsibilities, we should conclude that he is a municipal officer. Yakima County relies primarily on *State ex rel. Hamblen v. Yelle*.[1] That case sets out the criteria for

---

[1] 29 Wn.2d 68, 185 P.2d 723 (1947).

determining whether an employee is a "public officer of a civil nature." It is not helpful. First, the legislature is presumed to pass legislation with case law in mind. *Woodson v. State*, 95 Wn.2d 257, 262, 623 P.2d 683 (1980). And here the legislature could have chosen to use the term "public officer of a civil nature" and imported the meaning and analytical approach set out in *Hamblen*. But it did not.

¶12 Valley Environmental Laboratory argues that Mr. Osborne is neither elected nor appointed. It relies on the fact that he was paid by the hour, was required to join a union, and got his job by responding to a newspaper ad. In fact, it notes that his job is on the lowest tier of Yakima County's organizational chart.

¶13 A central question here is whether the term "municipal officer" in RCW 42.23.020 includes a natural resource specialist, Mr. Osborne's position.

¶14 Interpretation of a statute is a question of law that we review de novo. *Colby v. Yakima County*, 133 Wn. App. 386, 389, 136 P.3d 131 (2006). We start with the plain language of the statute. *State v. Wilbur*, 110 Wn.2d 16, 18, 749 P.2d 1295 (1988). We also liberally construe remedial statutes to suppress the evil and advance the remedy intended by the legislature. *Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 253, 143 P.3d 590 (2006).

¶15 The definition of "municipal officer" in this statute is expansive. The statute defines "municipal officer" as "all elected and appointed officers of a municipality, together with all deputies and assistants of such an officer, and all persons exercising or undertaking to exercise any of the powers or functions of a municipal officer." RCW 42.23.020(2).

¶16 The question here centers on whether Mr. Osborne exercises (and particularly in the transactions that are the subject of this suit) "any of the powers or functions of a municipal officer." RCW 42.23.020(2). He does not have to be a "municipal officer" to fall within the purview of the statute. He need only exercise the power of a municipal officer.

¶17 Did he exercise the power or function of a municipal officer when he referred these water samples to Valley Environmental? The answer to that question is the subject of some dispute. The declarations of his manager and his direct supervisor suggest that Mr. Osborne exercised such authority. His declaration suggests that he cannot exercise such authority. There is, then, a question of fact. *Barber v. Bankers Life & Cas. Co.*, 81 Wn.2d 140, 143-44, 500 P.2d 88 (1972).

¶18 We therefore reverse and remand for trial. The questions include: What powers or functions did Mr. Osborne exercise or undertake to exercise? Were these powers or functions the powers or functions of a municipal officer? If the answer to the last question is yes, then the question is whether his conduct violates the code of ethics for municipal officers. And the final question is whether Valley Environmental is entitled to recover, nonetheless, on a theory of quantum meruit.

BROWN, J., and KATO, J. PRO TEM., concur.

Reconsideration denied August 31, 2007.